## HYANNIS SAVINGS BANK *vs.* JOHN B. MOORS.
## BARNSTABLE SAVINGS BANK *vs.* SAME.

Barnstable. Jan. 25. — June 26, 1876. ENDICOTT & DEVENS, JJ., absent.

Land upon which a block of houses was in process of building was conveyed in mortgage, and a third person agreed in writing with the mortgagee to cause the houses to be fully completed without unnecessary delay, guaranteeing that they and all things appurtenant thereto should be fully completed to the acceptance of the mortgagee. At the time of this agreement the houses, which were built upon marsh land upon piles of the usual length for that territory, were all finished except the painting, papering and the like. They had then settled somewhat, to the knowledge of both parties, but no objection to the foundations was known by either party to exist. After they had been finished they settled further, and it became necessary for the mortgagee, to protect himself, to raise them and substitute new and longer piles. *Held*, that the third person was not liable on the guaranty for the insufficiency of the foundations.

Land on which a house was in process of building was conveyed in mortgage to a savings bank, and a third person agreed in writing with the mortgagee that the house should be without delay completely finished, and the lot graded, and the whole premises completed in every respect, and made clear and free from all liens and attachments whatsoever, and guaranteed to hold the bank harmless from all loss, costs and damages by reason of any neglect on his part to keep and perform all things contained in the agreement. *Held*, on the non-performance of the agreement, that the bank could finish the house and recover the expense thereof of the guarantor, although the mortgagor was solvent.

THE FIRST CASE was an action of contract on the following agreement signed by the defendant, and dated August 17, 1871:

"In consideration of one dollar to me paid by the Hyannis Savings Bank, a corporation in Barnstable, doing business under the laws of the Commonwealth of Massachusetts, the receipt whereof is hereby acknowledged, I hereby agree, to and with said bank, to cause to be fully completed, without unnecessary delay, the several houses this day mortgaged to said bank by Ezra D. Winslow, situate in Boston, in the state aforesaid, on the southwest side of Westminster Street, hereby guaranteeing to said bank that said houses and all things appurtenant thereto, standing on the land mortgaged to said bank, shall be fully completed and finished as aforesaid to the acceptance of said bank."

The case was submitted to this court on the following agreed facts: "The defendant executed said agreement on the day of its date. The houses referred to were in one block, and were built and plastered at the time of said agreement, but were not

finished inside in respect of painting, papering, bell-hanging and the like; these things were all done before the end of September, 1871. The houses were built upon piles upon marsh land, the piles being the usual length for that territory. Before the execution of the defendant's agreement the houses had settled somewhat, but for the purposes of this case it is agreed that no objection was then known to exist to the foundations. All the houses were finished according to the defendant's undertaking, unless the nature of the foundations, which subsequently made it necessary to raise said houses and substitute new and longer piles, is a defect in said houses or the things appurtenant thereto, which the defendant is bound by his agreement to rem edy. After the finishing, as above stated, the houses settled further, and about two months thereafter the plaintiffs notified the defendant that the houses had settled and that they were dissatisfied with the foundations, and that they should require the defendant to complete them. The defendant refused to do anything more, alleging that his contract had been fully performed. The foundations of a house are a part of the house; but this statement is made subject to all legal objections as to its legal effect or admissibility for the purpose of controlling the construction of this agreement. If upon the facts and pleadings the plaintiff is entitled to recover, the case is to go to an assessor to assess the damages; otherwise, judgment is to be entered for the defendant."

THE SECOND CASE was an action of contract. The declaration contained four counts. The first and second on the following agreement signed by the defendant, and dated August 12, 1871:

"In consideration of one dollar to me paid by the Barnstable Savings Bank, a corporation in Barnstable, doing business under the laws of the Commonwealth of Massachusetts, the receipt whereof is hereby acknowledged, I hereby agree, to and with said bank, to cause to be fully completed, without unnecessary delay, the several houses this day mortgaged to said bank by George W. Meserve, Patrick McAtear and Ezra D. Winslow, situate in Boston, in the state aforesaid, on the southwest side of Westminster Street, hereby guaranteeing to said bank that said houses and all things appurtenant thereto, standing on the land mortgaged to said bank, shall be fully comp'eted and finished as aforesaid to the acceptance of said bank."

The third and fourth counts were on the following agreement signed by the defendant, and dated October 21, 1871: "Whereas, Albert C. Pond has mortgaged to the Barnstable Savings Bank, by a mortgage dated October 2d, 1871, and recorded this day in Suffolk Registry of Deeds, for the consideration of seven thousand dollars, which mortgage is on premises situate on the southeast side of Westminster Street, and fully described in said mortgage, and upon the land, as in said mortgage described, now stands a house in process of erection or finishing. Now, therefore, know ye, that I, Joseph B. Moors, of Boston, in the State of Massachusetts, banker, for the consideration of one dollar, to me paid by the said Barnstable Savings Bank, the receipt whereof is hereby acknowledged, do hereby agree, to and with said bank, that said house shall without delay be completely finished, and the lot graded, and the whole premises completed in every respect, and made clear and free from all liens and attachments whatsoever, and I hereby guarantee to hold said bank harmless from all loss, costs and damage by reason of any neglect on my part to keep and perform all things contained in this agreement, loss by fire excepted."

The case was submitted to this court on the following agreed facts : "The defendant executed said agreements on the days of their respective dates. The houses referred to were in one block, and were built and plastered at the time of said agreements, but were not finished inside in respect of painting, papering, bell-hanging and the like; these things were all done, except as to the Pond house, before the end of September, 1871. The houses were built upon piles upon marsh land, the piles being the usual length for that territory. Before the execution of the defendant's agreements the houses had settled somewhat, but for the purposes of this case it is agreed that no objection was then known to exist to the foundations. All the houses, except the Pond house, were finished according to the defendant's undertaking, unless the nature of the foundations, which subsequently made it necessary to raise said houses and substitute new and longer piles, is a defect in said houses or the things appurtenant thereto, which the defendant is bound by his agreement to remedy. After the finishing, as above stated, the houses settled further, and about two months thereafter the plaintiffs notified the

defendant that the houses had settled and that they wert dissat-isfied with the foundations, and that they should require the defendant to complete them. The defendant refused to do any-thing more, alleging that his contract had been fully performed. The foundations of a house are a part of the house; but this statement is made subject to all objections to its legal effect or admissibility for the purpose of controlling the construction of the agreements. It is agreed with reference to the Pond house that the maker of the mortgage note was and is solvent, and the question is submitted whether under the circumstances the de-fendant is liable to pay more than nominal damages; if he is so the case is to go to an assessor to assess the damages; otherwise, judgment is to be entered for the plaintiff for $1, on the count on that agreement. If on the facts and pleadings the plaintiff is entitled to recover as to any of the other houses except the Pond house, the case is to go to an assessor to assess the dam-ages; otherwise, judgment for the defendant on the counts on the agreement as to said other houses."·

*G. Marston*, for the Hyannis Savings Bank. 1. The defend-ant undertook that the houses should be completed, and agreed that any deficiency should be supplied. They were imperfect and incomplete in their foundations. The foundation of a house is part of the house; it is useless without the superstructure, and a house is of no value without a proper foundation.

2. If the construction of the contract is in doubt, it must be construed most strongly against the defendant. *Hargreave* v. *Smee*, 6 Bing. 244; *S. C.* 3 Moore & P. 573. *Evans* v. *Whyle* 3 Moore & P. 130. *Bell* v. *Bruen*, 17 Pet. 161. The defendant contracts as surety or guarantor for the mortgagor, in support of the mortgage security. In cases of contracts for the construc-tion of an entire work at a stipulated sum to be paid for the same, if any casualty occurs, which increases the labor and ex-penditure of the contractor, the loss falls on him who engages to do the work· *Boyle* v. *Agawam Canal Co.* 22 Pick. 381.

3. The case finds that when the contract was made by the de-fendant "the houses had settled somewhat." In the absence of fraud, it is immaterial that "no objection was then known to exist to the foundations." Chit. Con. (11th Am. ed.) 1074. *Adams* v. *Nichols*, 19 Pick. 275, and cases cited. *Randall* v.

*Bancroft*, 10 Allen, 346.   *Drake* v. *White*, 117 Mass. 10.   *Wareham Bank* v. *Burt*, 5 Allen, 113.

J. M. Day, for the Barnstable Savings Bank.

G. O. Shattuck & O. W. Holmes, Jr., for the defendant.

AMES, J.   The subject matter of the contract was certain houses which had been begun and were in part finished.   So far as appearances went the finishing that remained to be carried out was "the inside painting, papering, bell-hanging and the like."   We must assume that the plaintiffs made such examination of the buildings as they saw fit; that they must have seen what kind of houses they were intended to be, must have understood what parts of them appeared to be finished, and were content to lend their money upon a mortgage upon them, provided security should be given that they should be finished as they had been begun.   The contract of the defendant was merely that they should be so finished, to the acceptance of the bank.   The builder thereupon proceeded to finish the houses, in all the items and particulars in which they were apparently and confessedly unfinished, so that they were then, and for about two months continued to be, to all appearance, in the condition required by the defendant's contract.   That is to say, the original design and plan of construction had been carried out, and the houses were finished as they had been begun.   There can be no doubt that, at the date of the contract, both parties supposed that this was all that was required.

The construction which the plaintiffs put upon this contract is that it requires of the defendant not only to supply this "inside painting, papering, bell-hanging and the like," but also to guarantee the sufficiency and good quality of the materials and workmanship in all that had been done upon the houses before he incurred any responsibility in the matter.   We think his contract will bear no such construction.   It does not appear that his attention was called to the security of the foundation, or that he had any means of knowledge in relation to it, that the plaintiffs did not also have.   Whatever might have been his liability if the houses had been destroyed by fire or tempest before they were completed, his responsibility terminated when they were completed by his supplying the unfinished items.   The argument of the plaintiffs would require him not merely to finish the

work that had been begun, but to put in an entirely new foundation, and possibly to reconstruct the entire building. If he was to correct all that might be found defective, it is obvious that his contract took a much wider range than he may have intended, both in amount and duration.

It is true that his guaranty was that the finishing should be to the acceptance of the bank. But it is obvious that this stipulation cannot enlarge the list of the things that he was to do, or make him responsible for deficiencies in workmanship or material, in matters not included in his contract. The whole difficulty in the case, and the whole of the plaintiffs' claim, arises from the insufficiency of the foundation, and for that we think he was not responsible. *Judgment for the defendant.*

In the case of the Barnstable Savings Bank, as we understand the agreed facts, the result as to the first and second counts must be the same as in the case just considered. But in the house built by Albert C. Pond, the inside finishing, to which the defendant's liability was limited by our decision in the case of the Hyannis Savings Bank, has not been supplied. The defendant's contract as to that house is not a mere guaranty that Pond shall finish it, but is an absolute promise that it shall at all events be finished without unnecessary delay. If therefore the plaintiff bank has been put to the expense of supplying the deficiency and finishing what remained unfinished upon that house, according to the rule laid down in the case of the Hyannis Bank, it would be entitled to recover the amount reasonably and in good faith so expended, with interest. Having lent the money upon a mortgage security, and not upon the mere personal credit of the borrower, the plaintiffs, as trustees and managers of the funds of their depositors, were bound to see that the security should be made and kept good. The expense incurred in so doing might not be recoverable of the borrower, so that his continued solvency would furnish no reason why this defendant should be relieved of his liability. According to the terms of the reservation, therefore, the case is to go to an assessor for the *Assessment of damages to that extent only.*