## John Stone *versus* George A. Hodges *et al.* and Trustees.

A contract was made between K and H, for the joint purchase of 20,000 Russia mats, which were to be stored by H. Afterwards, on May 6, 1829, a new contract was entered into by the parties, which was as follows: " K bought of H 20,000 Russia mats, at 10 cents each, $2,000. It is understood K is to pay $4 per month, storage for the above mats, from this date, and interest on the mats until paid for; and the said K is not to pay for said mats more than the amount indorsed on this bill, till the same are sold." On the back of this contract was an indorsement by H, of the same date, acknowledging the receipt of $1104·50 in cash and notes. On May 8, 1829, H caused the mats which had not been so paid for, to be attached on a writ in favor of one of his creditors. On May 13, 1829, K was summoned as the trustee of H, at the suit of W. On June 5, 1829, K brought an action of trespass against the sheriff for attaching the mats and recovered judgment for the value of the mats so attached. In a process of foreign attachment in which K was summoned as trustee of H, immediately after the amount of this judgment had been paid over to K, it was *held*, that the property in the mats vested in K, upon the sale to him on May 6, 1829; that the attachment of the mats, being a tortious act, in no respect affected such sale; and therefore that K was chargeable as the trustee of H, when he was summoned at the suit of W, for the residue of the mats not paid for by him at that time.

By the answers of the supposed trustees, the following facts appeared. On November 5, 1828, a contract was made between the defendants George A. Hodges and Gardner Wheelwright, who were partners, of the one part, and Kittredge and his partner, Wyman, two of the supposed trustees, of the other part, for the joint purchase from Hodges, of 20,000 Russia mats, at ten cents each, on six months' credit ; and it was agreed, that Hodges should store the mats six months free of expense ; that as fast as the mats should be sold, the proceeds should be paid to Hodges, who was to allow interest for the same until the six months' credit expired ; and that the expense of delivering the mats should be paid by the parties, as interested.

On May 6, 1829, a new contract was entered into by the parties, in relation to the mats, which was in the following words ; " Boston, May 6, 1829. Messrs. Kittredge & Wyman bought of George A. Hodges & Co. 20,000 Russia mats at 10 cents each, $2,000. Received payment. It is understood Kittredge & Wyman are to pay four dollars per month,

Stone
v.
Hodges.

storage for the above mats, from this date, and interest on the mats until paid for ; and the said Kittredge & Wyman are not to pay for said mats more than the amount indorsed on this bill, till the same are sold."

On the back of this last contract was an indorsement by the defendants, of the same date, acknowledging the receipt of $1104·50, consisting of $324·50, in cash, and of the promissory notes of Kittredge & Wyman, for $780.

None of the mats were removed by Kittredge & Wyman from the store of the defendants, between May 6, and May 8, 1829, on which last day the mats then in the store, amounting in number to 17,000 or 18,000, were attached by Baldwin, a deputy sheriff, on a writ against the defendants in favor of one of their creditors. Soon after the attachment, Baldwin relinquished to Kittredge & Wyman a portion of the mats, but continued to hold the residue of them, 8474 in number, by virtue of his attachment. The mats delivered to Kittredge & Wyman before May 6, 1829, together with those so relinquished by Baldwin, constituted the amount paid for by them as specified in the indorsement on the contract of May 6, 1829.

On May 13, 1829, Kittredge and Wyman were summoned as the trustees of the defendants, at the suit of Stephen White ; which action was pending in the Court of Common Pleas at the time when these answers were filed ; but it was admitted, that they had subsequently been adjudged trustees in such action.

On June 5, 1829, Kittredge and Wyman commenced an action of trespass against the sheriff, for the attaching and carrying away of the 8474 mats, by his deputy Baldwin ; at the trial of which action, Wheelwright testified, that his partner, Hodges, procured the writ and caused the attachment which was the ground of the action against the sheriff, to be made. Final judgment was rendered against the sheriff, at the March term 1831, of this Court, for the sum of $939·15, damages, being the value of the mats and interest, together with costs.

In regard to this action, Kittredge, in his disclosure, stated that they considered the mats to be their property and to be worth more than ten cents each ; and that if he had supposed

Stone
v.
Hodges.

that the mats were not worth more than ten cents, each, and that they were not liable to pay for them, to the defendants or any other person, he should not have brought the action.

On April 13, 1831, the execution issued upon this judgment was satisfied, and the amount was paid to Henry H. Fuller Esq., the attorney of Kittredge and Wyman, who was summoned as a trustee in the present action. On April 30, 1831, after notice of such payment had been given to them by Mr. Fuller, but before the money had been paid over to them, they were summoned as trustees at the suit of the present plaintiff.

The respondents, Kittredge and Wyman, prayed, that in case the Court should be of opinion, that they were chargeable as trustees in the present suit, they might be allowed to deduct from the amount recovered by way of damages in their action against the sheriff their expenses and the charges of their attorney in prosecuting that action to final judgment.

*J. Pickering* and *Bassett* for the plaintiff. The respondents, Kittredge and Wyman, were not chargeable as trustees of the defendants on account of the mats which had not been paid for by them, when they were summoned at the suit of White. The contract of May 6, 1829, which rescinded that of November 5, 1828, was not a mere bill of sale, but an executory contract, and the property in the mats did not pass to Kittredge and Wyman at all, or only *sub modo ;* the mats were not to be paid for by them, till they were sold, and this was a contingency which might never happen. Bac. Abr. *Customs of London, H.* There was therefore no determinate debt, *debitum in præsenti*, due from Kittredge and Wyman to the defendants, at that time.

*March* 27 h,
1832.

If the respondents were indebted absolutely to the defendants, they could not deduct the expenses of the suit against the sheriff, from such debt ; and their prayer to be allowed such a deduction shows their construction of the contract.

Further, the respondents were not at that time chargeable as trustees, as they had only a constructive possession of the mats. *Andrews* v. *Ludlow and Trs.*, 5 Pick. 28. The agreement by them to pay the storage is no evidence of a

Stone
v.
Hodges.

delivery to them, nor an *indicium* of ownership. *Bailey* v *Ogden*, 3 Johns. R. 399 ; *White* v. *Wilks*, 5 Taunt. 176.

The defendants had a lien on the mats, as the vendors, and the respondents would not be chargeable as trustees at the suit of White, until there had been a delivery of the mats to them.

Hodges rescinded the contract of May 6, 1829, by causing the mats to be attached, and at the time when Kittredge and Wyman were summoned as trustees by White, they had not elected, by bringing the action against the sheriff, to adhere to the contract or to annul it. It would be dangerous to allow trustees, in this way, to decide whether they would become chargeable or not.

In order to charge a trustee, there must be a right of action against him, in favor of the principal ; *Chealy* v. *Brewer*, 7 Mass. R. 259 ; but in this case, if the defendants had sued Kittredge and Wyman upon their contract, the attachment of the mats through the agency of Hodges, would have been a good defence ; the respondents were under no obligation to pursue the property in the hands of the sheriff. Brown on Sales, 343.

The respondents did not, therefore, become liable as the trustees of the defendants till the amount of the judgment recovered in the action against the sheriff was paid to their attorney in that suit.

*Morey*, for the trustees, cited to the point of the contingency of the debt, *Thorndike* v. *De Wolf*, 6 Pick. 122 ; to the point, that the respondents were protected by the judgment in the trustee process sued out by White, 1 Big. Dig. *Trustee Process*, E.

April 8th,
1833.

WILDE J. delivered the opinion of the Court. Upon the facts disclosed by the trustees, we are of opinion, that they are not liable in this suit.

It appears by the disclosure, that before this writ was served upon them, they had been summoned as the trustees of the principal defendants, in a suit against them in favor of Stephen White, and it is admitted that they have been since adjudged trustees in that action. It is not contended, that any surplus remains in the hands of the trustees after satisfying White

demand ; but it has been urged by the plaintiff's counsel, that at the time of the service of White's writ, the trustees were not indebted for the mats purchased, because they were not to be paid for until they should be sold by the trustees. That this limitation of the time of payment merely would not discharge the trustees, seems to us very clear. The mats had been sold at an agreed price, part of which had been paid, and the trustees were indebted for the residue. It was a demand *debitum in præsenti*, and rendered the trustees liable.

The plaintiff's counsel have also argued, that the trustees were not liable in the former suit, as they had only a constructive possession of the mats, and as the mats had been attached and taken by one of the creditors of Hodges and Wheelwright, as their property, the trustees might rescind the contract.

As to the possession of the mats, it is quite immaterial whether it was constructive or actual ; the sale was complete, and the property in the mats was vested in the trustees. If they had held the mats in trust, and had been charged on that account, the distinction between actual and constructive possession, as laid down in the case of *Andrews v. Ludlow and Trs.*, 5 Pick. 28, might be applicable. But the trustees were charged in the former suit for the price, and could not, by law, be charged on any other ground.

As to the supposed rescinding of the contract, it is clear that the attaching of the mats, as the property of Hodges and Wheelwright, could have no such effect. The taking by the sheriff under that attachment, was a tortious act, and the trustees recovered against him in an action of trespass. *Kittredge v. Sumner*, 11 Pick. 50. This, therefore, could in no respect affect the sale.

*Trustees discharged.*