INHABITANTS OF WINTHROP *vs.* ELIZA M. SOULE, executrix,
& another.

°SAME *vs.* ELIJAH CROSBY.

Suffolk.   November 21, 22, 1899. — March 2, 1900.

Present: HOLMES, C. J., MORTON, BARKER, HAMMOND, & LORING, JJ.

*Bond — Town — Auditor's Report — Negligence — Evidence.*

No exception lies to the admission in evidence of an auditor's report, objected to
for the first time upon the ground that his conclusions were based on incom-
petent evidence.

Negligence of the officers of a town, in not discovering at an earlier date the defal-
cation of its collector of taxes, will not discharge the sureties on his bond.

Evidence that the officers of a town sent to the sureties on the bond of its collector
of taxes copies of a book published by the town for certain years, containing
printed copies of the reports of the auditor and of the treasurer of the town for
those years, which reports contained alleged false statements as to the accounts
of the collector of taxes, inducing the sureties to lie quiet and to take no steps
to protect themselves from loss until the collector, who was a defaulter, had
transferred his property and the lien for uncollected taxes was lost, is inadmis-
sible in an action by the town on the bond.

TWO ACTIONS OF CONTRACT, upon a bond executed by
E. Everett Crosby as principal and by Elijah Crosby and
Horatio S. Soule as sureties, and conditioned for the faithful
performance by the principal of the duties of collector of taxes
of the plaintiff town.   Writs dated November 4 and 9, 1896,
respectively.   The cases were tried together in the Superior
Court, before *Sheldon,* J., who allowed a bill of exceptions in
each case, in substance as follows.

The defendant E. Everett Crosby was duly elected collector
of taxes of the plaintiff town on March 5, 1894, and on August
15, 1894, gave the bond in suit.

On August 20, 1894, the assessors of the town duly com-
mitted to Crosby a warrant and tax list for a total assessment
of $75,039.07.   Crosby entered upon the performance of his
duties as collector, and continued as such collector until about
the middle of October, 1896, when he disappeared.   At the time
of his disappearance he had collected of the taxes so committed
to him $72,660.34, and had paid over to the town treasurer

$66,398.06, leaving a balance of $6,262.28 collected by him and not accounted for. Crosby failed to collect of the taxes on the tax list which had been committed to him, taxes amounting to $2,507.94. By vote of the town passed March 5, 1894, it was voted that six per cent interest be charged upon all taxes remaining unpaid November 1, 1894, and interest was due upon the uncollected taxes of $302.20 at the date of each writ. Of this amount of uncollected taxes and interest the sum of $1,464.34 was collected by David Floyd after Crosby's disappearance, Floyd having been elected collector by the town, and charged with the collection of the balance of the taxes of 1894 not collected by Crosby. The only evidence introduced by the plaintiff was the report of an auditor in its favor, which was filed October 8, 1898. The defendants on February 27, 1899, before trial, duly moved to recommit the auditor's report for amendment, but this motion was denied. The defendants objected to the admission of this report in evidence, on the ground that it appeared that certain evidence was admitted and considered by the auditor which they contended was inadmissible, but failed to set out this evidence, so that the defendants were unable to have the matter duly passed upon by the court. The judge overruled the objection, and admitted the report; and the defendants excepted.

The defendants offered to prove that the following by-laws of the plaintiff town were in force during the period from March, 1894, to the date of each writ:

" On the first secular day of each month, and as often as the amount in his hands reaches two hundred dollars or upwards, the collector shall pay over to the treasurer of the town all taxes by him collected, and shall, on or before the seventh day of February in each year, make up his annual account and render the same to the selectmen.

" At each annual meeting the town shall choose two auditors, whose duty it shall be to examine the books and accounts of the selectmen, treasurer, collector, and all other special committees or officers having the charge of the expenditure of money, as soon as possible after the close of the financial year of the town, and report at the next town meeting in detail, under their respective heads, all the receipts and expenditures by

the town for the previous year. Said report, with the annual reports of the selectmen, assessors, overseers of the poor, surveyors of highways, school committee, town treasurer, town clerk, collector of taxes, sinking fund commissioners, board of health, and superintendent of the cemetery, shall be printed by the selectmen, and a copy thereof left at every dwelling-house in town, four days at least, before the annual meeting, and twenty-five copies shall be delivered to the town clerk."

The defendants further offered to prove that the collector did not turn over the amounts collected by him in the manner required by the by-laws, nor did the treasurer require it or make demand therefor; that the town elected auditors for the year 1894, who, in the spring of 1895, took from Crosby a statement of collections and receipts that he had made upon the taxes of 1894; that the auditors made no examination whatsoever of the books of the collector, although if such an examination had been made it would have shown that the statement then made by Crosby was untrue, and that a larger amount of the taxes had been collected by him and had not been turned over to the town treasurer; that a book called "The Forty-third Annual Report of the Officers of the Town of Winthrop, Massachusetts, for the year ending January 1, 1895," published in accordance with the by-laws, and also in accordance therewith delivered at every inhabited house in the town, contained a report of the auditors dated February 14, 1895, the material part of which was as follows:

"We hereby certify that we have carefully examined and compared the books and accounts of the selectmen, overseers of the poor, treasurer, collector of taxes, town clerk, and trustees of the public library of the town of Winthrop, and all original bills and vouchers on which moneys have been paid from the treasury of said town during the past year, and find the same to be correct."

This book also contained the report of the collector, dated January 9, 1895, which was identical with the statement submitted by him as above stated to the auditors, in which he charged himself with the following items: "Amount of assessors' warrant, $75,010.67; added assessments, $53.64; interest, $49.77"; and credited himself with the following items:

" Cash paid treasurer, $49,531; abatements, $610.10; balance of unpaid taxes, $24,972.98."

The defendants further offered to prove that a copy of this book was sent to the defendant, Elijah Crosby, at his request, at his home in Chatham, and was examined by him, and he relied upon the statements therein; that another copy of this book was sent to Soule, the other surety, in Florida, where he then was, and was examined by him; that Soule died in the spring of 1895, and the defendant Eliza M. Soule was appointed executrix of his will; that in the year 1895 the plaintiff town elected auditors, who, in the spring of 1896, took from E. Everett Crosby a statement similar to that taken by the auditors of the previous year, but made no examination of his books, although if such an examination had been made it would have appeared that the statement was entirely untrue, and that more money had been collected than was set out in the statement; that a book called " The Forty-fourth Annual Report of the Officers of the Town of Winthrop, Massachusetts, for the year ending January 1, 1896," published and delivered in the same manner as the "Forty-third Annual Report," contained the report of the collector, dated January 8, 1896, which was identical with the statement made by him to the auditors as above stated, in which he charged himself with the following items: " Balance of unpaid taxes, $24,972.98; interest, $493.60 "; and credited himself with the following items: " Cash paid treasurer, $13,365.60; abatements, $231.57; balance of unpaid taxes, $11,878.41 "; and also contained a certificate of the auditors, the material part of which was as follows: " We hereby certify that we have examined the accounts of the selectmen, treasurer, collector of taxes, trustees of public library, and sinking fund commissioners, and find same to be correct."

The defendants further offered to prove that E. Everett Crosby was possessed of certain property, real and personal, prior to the issuing of the reports above mentioned; that before he absconded he encumbered such property by the execution of mortgages, and made conveyances of the property to persons other than the sureties; that the sureties and the defendant executrix relied upon the statements published by the town in the reports, and so relying took no steps to provide for the

proper performance of his duties as collector by Crosby and to protect themselves against the consequence of his default; that he did not disappear until the lien for taxes for the year 1894 upon the estate of the persons taxed had expired; that until his disappearance the defendants and the testator had no notice or knowledge of any defalcation or improper action by him; that the defendants and the testator were induced by the false statements published by the town to remain quiet until the time of Crosby's disappearance, and were thus deprived of the benefit of enforcing the collection of unpaid taxes while a lien for the enforcement thereof existed, and of the benefit of the property of Crosby to make good any loss caused to them by his defalcation; and that citizens of the plaintiff town assessed for taxes for the year 1894, alienated their property after the first day of October, 1894, and before action could be taken by Floyd to collect the same, so that any lien upon such property was lost.

The judge ruled that these facts, if established by evidence, would not constitute a defence in law; and directed the jury to return a verdict for the plaintiff, in each case. The defendants alleged exceptions.

*W. C. Wait,* for Eliza M. Soule.

*F. J. Dakin,* for Elijah Crosby.

*E. R. Thayer,* for the plaintiff.

BARKER, J. 1. The exception to the admission in evidence of the auditor's report is not argued. The objection to the report that his conclusions were based on incompetent evidence, could not be taken for the first time at the trial. *Briggs* v. *Gilman,* 127 Mass. 530. *Collins* v. *Wickwire,* 162 Mass. 143. See *Sullivan* v. *Arcand,* 165 Mass. 364, 367. The report was properly admitted.

2. The remaining exception is to the rejection of a somewhat extended offer of proof on the part of the defendants. Speaking generally, this offer may be divided into two branches. One is that different officers of the town were grossly negligent in not discovering at an earlier date the defalcation of its collector of taxes. Each of the excepting parties now concedes that such negligence will not discharge the sureties upon the collector's bond. See *Amherst Bank* v. *Root,* 2 Met. 522; *Watertown Ins. Co.* v. *Simmons,* 131 Mass. 85. The other branch of the offer

was to show that the officers of the town, in accordance with its by-laws, sent to the sureties on the bond copies of the town's book for the years 1895 and 1896, containing printed copies of the reports of the town auditors and of the town treasurer for those years, which reports contained false statements as to the accounts of the collector of taxes, which false statements induced the sureties and the executrix of Horatio S. Soule to remain quiet and to take no steps to protect themselves from loss until the defaulting collector had transferred his property, and the lien for uncollected taxes was lost.

We are of opinion that this evidence also was rightly excluded. In the first place the by-law did not authorize any other distribution of the town book than the leaving of a copy thereof at every dwelling-house in the town four days at least before the annual town meeting and the delivery of twenty-five copies to the town clerk. Therefore the sending of copies to one surety in another town where he resided, and to another surety in the State of Florida where he then was, was not done in accordance with the by-law, and was not the act of the town, but the unauthorized act of the selectmen, or of the person who so sent those copies.

Aside from this, if we should assume that the copies were sent by authority of the town, the fair construction of the statements of the town book is not that contended for by the defendants. The plain purpose of the publication was merely to give to those interested early information as to the tenor of the reports copies of which were contained in the book. By publishing copies of the reports the town could not be understood to assert that the statements of the reports were true, and to invite those who should receive the copies to rely upon the truth of those statements. The publication was rather an invitation to all persons interested to examine the truth of those statements, which in the nature of things must be dealt with by the town at its approaching annual meeting, to criticise and investigate, and to take such steps as they might desire to protect their own rights. As addressed to the sureties upon the collector's bond, the true construction to be placed upon the sending to them of copies of the reports of the town officers was as if the town had said, " You are responsible for the due discharge of the

collector's duty. He claims, by his report, to have made no default. The town auditors report that his accounts are correct. We invite you to look into the matter so far as you may be interested in it and to take such action as you may see fit." Neither the sending of the copies, nor the subsequent acceptance of the reports by the town meeting, can be construed to be a representation by the town to the sureties that the statements of the reports were true, or an inducement to them to sleep upon their rights. The only representation made by the publication of the town book was that the several reports, copies of which it contained, were of the tenor therein set forth. This representation was not false, but true. If it is to be treated as a statement of the town to the sureties, that is the only sense in which the sureties had a right to understand it, and it was neither intended nor calculated to deceive them, and does not bring the case within the principle of *Baker* v. *Briggs*, 8 Pick. 122, or of *Carpenter* v. *King*, 9 Met. 511. See *Fitchburg Savings Bank* v. *Rice*, 124 Mass. 72, 76.

The evidence offered did not tend to show that the town had released any security which it held or negligently suffered any lien to expire. The whole contention at the trial was that the sureties by relying upon the truth of the reports of the town auditors and the town treasurer had lost the opportunity to protect themselves by discovering the defalcation and using means to secure themselves out of the defaulter's property, and by collecting the taxes committed to him for collection.

*Exceptions overruled.*