INHABITANTS OF HUDSON *vs.* EDWARD P. MILES & others.

Middlesex. March 2, 3, 1904. — May 19, 1904.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Surety. Bond. Municipal Corporations.*

It is no defence to an action by a town against individual sureties on the bond of a defaulting collector of taxes, that before the defendants signed the bond as sureties officers of surety companies had stated to the chairman of the selectmen of the plaintiff that they had investigated the collector's character and habits, that there was a woman mixed up in the case, and that on account of his bad reputation they had refused to go on his bond giving as their ostensible reason that they did not wish to go on collectors' bonds, and that the chairman "informally reported" to the other selectmen and to one of the defendants what he was told, no disclosure being made to the other defendants.

The sureties on the bond of a collector of taxes given for the faithful discharge of his duties during his whole term are liable for sums received during the portion of his term before the bond was given.

If the bond of a collector of taxes of a town with two sureties has been approved by the selectmen of the town under the requirements of R. L. c. 25, § 77, c. 12, § 67, another bond with twenty sureties given later by the same collector for the same period and accepted by the town is good at common law even if the selectmen have exhausted their statutory power of approval.

Cases cited, deciding that an instrument under seal needs no consideration, although the point that the bond in this case was without consideration as to the sureties was not open, not having been taken at the trial.

In an action by a town against the sureties on the bond of a defaulting collector of taxes, the defendants cannot introduce evidence of statements made to them by the principal to induce them to sign as sureties which never were brought to the knowledge of the plaintiff or its selectmen.

In an action by a town against twenty sureties on the bond of a defaulting collector of taxes, who previously had filed a bond with two sureties for the same period, it is immaterial whether the new bond was intended by the principal and the sureties as an additional bond or as a substitute for the former bond, or whether the sureties were ignorant of the existence of the former bond, if the delivery of the new bond was absolute and was not made conditional on any of these things.

Negligence on the part of the auditors, selectmen and treasurer of a town in failing to discover the misconduct of a defaulting collector of taxes is no defence to an action by the town against the sureties on the collector's bond.

In an action by a town against the sureties on the bond of a defaulting collector of taxes, the defendants are liable for any deficiency in the funds to be accounted for by the collector during the term covered by the bond arising from his application of the funds in payment of previous deficiencies, if the payments were received by the town in good faith.

LORING, J. This is an action on a bond dated July 1, 1899, given by a collector and twenty sureties. The bond recites that the defendant Miles has been elected collector of taxes of the plaintiff town for the current year, has accepted and been duly sworn, and is conditioned that he " shall, as collector of taxes as aforesaid, faithfully collect, account for and pay over all moneys which he shall be legally required to collect as collector of taxes as aforesaid and shall faithfully discharge all the other duties of said office during the time he shall hold said office under said election." The case came on for trial before a jury. Under the direction of the presiding judge a verdict was entered for the plaintiff. The case is here on a report which provides that if the rulings made at the trial were right, judgment is to be entered on the verdict and execution is to issue for $9,800.10, with interest from August 24, 1901, with costs.

We are of opinion that the rulings made at the trial were right.

It appeared in evidence that the defendant Miles, the principal named in the bond now in suit, was elected collector of taxes for the years from 1893 to 1900 inclusive. Before 1896 he had given bond with individual sureties, and in 1897 and 1898 a surety company went surety for him on his bond. After Miles's election in March, 1899, he was asked by the selectmen to furnish his bond. They learned in that connection that he intended to furnish a surety company as surety, but that he had difficulty in procuring one to go on his bond. In July the assessors were ready to commit their warrant to the collector. On July 18 Miles gave a bond with the defendant Apsley and the defendant Blake as sureties. This was given in pursuance of a letter written by Apsley in which he stated that Miles was expecting to give a bond with a surety company as surety, that there was a delay in procuring the surety company, and that he would be liable until such a bond was given. The bond given July 18 in pursuance of this letter was in the same form as the bond sued on. This bond was approved by the selectmen on July 18, and the warrant for the taxes was forthwith committed to Miles by the assessors. After this bond was given, Miles procured the defendants other than himself to sign a paper agreeing to sign his bond as collector " if twenty names are secured."

Twenty names were secured, and the bond sued on was executed by the twenty as sureties and was approved by the selectmen September 22, 1899. Miles, together with the defendants Apsley and Blake, understood when they executed the bond on July 18 that as soon as possible a bond with a surety company as surety was to be procured and "filed in place of" the one executed by them and approved by the selectmen on July 18, and that bond, by vote of the selectmen on February 6, 1900, was delivered to the defendant Apsley.

In January, 1901, it was learned by officials of the town that the defendant Miles had been guilty of wrongdoing, and he was arrested on January 28 of that year.

All money collected and paid over by Miles while collector for 1899 was deposited by him in a bank to the credit of the treasurer of the town. When he deposited money he made a deposit slip in duplicate; one was returned to him after being verified by the cashier of the bank and the other was retained by the bank. The bank made a memorandum of the amount but not of the items of the deposit, and sent it to the town treasurer. On the deposit slip was stated the year to which the deposit was to be applied, and the names of the drawers of the checks deposited. Miles's method was to withhold money or checks collected by him, and to cover deficits so created with money collected upon the levy of a later year. His failure to turn over money collected extended throughout the whole period from 1894, and the total of his deficits increased steadily.

It was shown that before July, 1899, the chairman of the selectmen called on the officers of the surety company which had gone surety on Miles's bond for the years 1897 and 1898, and "informally reported to the other selectmen and the defendant Apsley what he was told as their reasons for declining further to act as surety, or to become surety." The defendants then offered to show "that the surety companies stated to Mr. Tower, the chairman, that they had investigated Mr. Miles's character and habits, that there was a woman mixed up in the case, and on account of his bad reputation they refused to go on his bond, giving ostensibly that they did not wish to go on collectors' bonds, but the real reason was as given to Mr. Tower." The first exception is to the exclusion of this evidence.

To make this admissible the defendants must make out that this information which came to the selectmen by its being " informally reported " to them by the chairman, was information coming to persons whose knowledge is the knowledge of the plaintiff town, (see *Lee* v. *Munroe*, 7 Cranch, 366, *Hawkins* v. *United States*, 96 U. S. 689, 691,) and information which came to them in such a way that the town was chargeable with it, as to which see *Sooy* v. *State*, 12 Vroom, 394, 400.

However these questions would be decided, we have found no case which goes so far as we are asked to go in the case at bar. It may be taken to be settled that if it is known to the obligee of a bond that the principal in the past has been guilty of irregularities in respect to the duties for the faithful performance of which in the future the bond is given, a failure of such an obligee to disclose that fact is a defence to the liability of the surety. *Phillips* v. *Foxall*, L. R. 7 Q. B. 666. *Sooy* v. *State*, 10 Vroom, 135. The ground of this defence in some cases has been stated to be that fraud is made out, *Lee* v. *Jones*, 17 C. B. (N. S.) 482, 507, and in other cases that there is a concealment of facts which the surety has a right to know. *Railton* v. *Mathews*, 10 Cl. & F. 934, 943. But whichever is the ground of the defence it does not extend in our opinion to a case where the information which has come to the obligee of a bond of a collector of taxes is no more definite than " that there was a woman mixed up in the case," and especially when the information which has come to the obligee does not rise higher than hearsay or rumors, as to which see *State* v. *Atherton*, 40 Mo. 209, 215, 217.

Evidence that $421.67 of the sum found due to the plaintiff was collected between July 18 and September 22 was rightly excluded. The bond is in terms given for the faithful discharge by the collector of his duties for the whole term. In such a case the sureties are liable for sums received during the term in question, although received before the bond was given. *Hatch* v. *Attleborough*, 97 Mass. 533. See *McIntire* v. *Linehan*, 178 Mass. 263.

The third exception is to the refusal of the presiding judge to rule " that the power of the selectmen to accept and approve a bond of the collector for the year 1899 was exhausted " by the approval of bond with the defendants Apsley and Blake as sure-

ties, and "that the bond sued upon was invalid and inoperative and to direct a verdict for said defendants." The defendants Apsley and Blake did not join in the request for this ruling. It is true, as the defendants contend, that until the bond of the collector was approved by the selectmen under R. L. c. 25, § 77, the tax list and warrant could not be transmitted to the collector, R. L. c. 12, § 67, but it does not follow that after that had been done a bond could not be given at common law. We are of opinion that the bond was good as a common law bond. See in this connection *Smith* v. *Crooker*, 5 Mass. 538; *Wendell* v. *Fleming*, 8 Gray, 613; *Sooy* v. *State*, 12 Vroom, 394; *Estate of Ramsay* v. *People*, 197 Ill. 572; *Morrell* v. *Sylvester*, 1 Greenl. 248.

An argument has been made by the defendants that the bond is without consideration. But that point was not taken at the trial, and is not open here. In disposing of the argument on this ground we do not mean to intimate that there would have been anything in the point had it been taken, as to which see *Page* v. *Trufant*, 2 Mass. 159; *Mather* v. *Corliss*, 103 Mass. 568, 571; *Comstock* v. *Son*, 154 Mass. 389; *Krell* v. *Codman*, 154 Mass. 454; *Roth* v. *Adams*, *ante*, 341; *Graham* v. *Middleby*, *ante*, 349; *Sooy* v. *State*, 12 Vroom, 394, affirming *Sooy* v. *State*, 9 Vroom, 324.

The next exception is to the exclusion of evidence offered by the defendants Keith, Hall, Knight and Jennison, as to what was said by Miles when he asked them to agree to execute the bond as one of the twenty sureties. The defendants Keith and Jennison each offered to show that he was told that the bond he signed was to take the place of a temporary bond while in fact the bond executed by Blake and Apsley was not a temporary bond. Hall offered to show that Miles told him that he had no bond and it was necessary for him to have one. Knight offered to show that Miles said that he had to have a personal bond because the surety companies had given up going as surety on bonds of collectors. The defendant Trow offered to show that Miles told him nothing about the first bond executed by Apsley and Blake, and Hall and Knight offered to show that they were ignorant of the existence of that bond.

No evidence was offered connecting these statements with the

plaintiff or to show that they ever were brought to the knowledge of the plaintiff or of the selectmen.    The obligee's right to hold the surety does not depend on representations made by the principal on his own behalf without knowledge of the obligee.

This bond was executed and delivered, and it is immaterial whether it was intended by the principal as an additional bond or as a substitute for the former bond, or was given in ignorance of the fact that there was another bond or whether some of the twenty-one defendants had one of these three intentions and some another.    The delivery of the bond was absolute and was not made conditional on any one of these things.    This exception must be overruled.

" Evidence was offered tending to show negligence on the part of the auditors, selectmen and treasurer of the town, since 1894, when Miles' peculations began, to January, 1901, when they were discovered, in failing to make investigations which would have disclosed his misconduct and insisting on his keeping certain books they furnished."    Apart from the question whether the neglect of the auditors, selectmen or treasurer is the neglect of the plaintiff, (see *Winthrop* v. *Soule*, 175 Mass. 400,) their neglect is not a defence if it is the neglect of the plaintiff. *Amherst Bank* v. *Root*, 2 Met. 522.    *Watertown Ins. Co.* v. *Simmons*, 131 Mass. 85.    *Winthrop* v. *Soule*, 175 Mass. 400.    *Welch* v. *Walsh*, 177 Mass. 555.

It appeared that the amount collected by Miles was $65,813.86 ; the amount " deposited to the credit of the town or paid to the treasurer as collected upon his warrant for 1899 was $56,366.28," a difference of $9,447.58 ; in addition he failed to collect $352.52, making the sum of $9,800.10, for which by the terms of the report execution is to issue if the rulings made at the trial were right.    Of the $9,447.58 Miles " received $2,754.77 in checks, which he deposited as received but did not credit them to taxpayers from whom he received them upon his list for 1899." The defendants " claimed that inasmuch as the plaintiff actually received these sums, they were entitled to credit for them in reduction of the balance found due the plaintiff by the auditor." It appeared that the " total amount deposited to the credit of the plaintiff by Miles upon all his tax lists during the period between July 18, 1899, and January 28, 1901, the date of his

arrest, was $73,654.27." This ruling was refused and an exception taken.

It was decided in *Colerain* v. *Bell*, 9 Met. 499, that, where a collector of taxes who held the office for two terms with different sureties on his official bond applied sums received from taxes during the second term to the payment of taxes due during the first term which had been collected by him and had not been paid to the town, the sureties on the bond for the second term were liable if the sums paid were received in good faith by the town. That case was followed in *Sandwich* v. *Fish*, 2 Gray, 298, and *Egremont* v. *Benjamin*, 125 Mass. 15. See also *Sooy* v. *State*, 12 Vroom, 394, on appeal from *State* v. *Sooy*, 10 Vroom, 539, in which *Egremont* v. *Benjamin*, *ubi supra*, is cited and followed. That is decisive of this exception. It was stated in argument by counsel for the plaintiff that the checks for $2,754.77 were used to make good deficits caused by a failure to pay taxes collected during the year in question. Whether that is so or not does not appear from the report of the presiding judge. If we assume in favor of the defendants that it was not, the point is concluded by the authorities cited above.

The trial of this case is anomalous in that the court has undertaken to dispose at one sitting of the two questions which ordinarily are taken up separately, namely, whether there has been a breach of the bond, and, when that has been established, for what amount execution is to issue under R. L. c. 177, §§ 9, 10.

The entry must be

> *Judgment on the verdict. Execution to issue for $9,800.10, with interest from August 24, 1901, and costs.*

*R. E. Joslin*, (*S. W. Mendum* with him,) for the plaintiff.
*L. C. Southard*, for the defendants.