CITY OF NEWBURYPORT *vs.* CHARLES E. DAVIS, executor.

Essex.    January 19, 1911. — May 19, 1911.

Present : KNOWLTON, C. J., MORTON, LORING, BRALEY, & RUGG, JJ.

*Bond*, Construction, Breach. *Municipal Corporations*, Officers and agents. *Damages*, In action of contract: bond.

A bond with sureties, given to a city by its treasurer and collector of taxes, after reciting the election of such officer " for the current municipal year," provided that, if he " shall well and truly perform all of the duties and responsibilities which devolve upon him by virtue of his acceptance of the two offices aforesaid during the term for which he has been elected and for such further term or

terms or portion of a term for which he may be elected or for which he may serve and if [he] shall annually not later than the first Monday in February, obtain the approval in writing of the mayor and aldermen of said city . . ., then this obligation shall be void, otherwise it shall remain in full force." The officer was elected for several successive years without a new bond being given. *Held,* that, the obtaining of " the approval of the mayor and aldermen," whatever that provision in the bond might mean, not being a condition precedent to the continuation of the obligation, the obligation expressed in the bond was not limited to the current municipal year, but continued through successive years of continuous election to and service in the offices of treasurer and collector of taxes.

The mere fact that a bond given to a city by its treasurer and collector of taxes, which by its terms was a continuing obligation during successive terms of office of the obligor, was not approved by the mayor and aldermen as required by R. L. c. 25, § 72 ; c. 26, § 2, and by ordinances of the city, will not prevent recovery thereon by the city in case of its breach, if it is good as a common law bond.

In an action by a city upon the bond of its treasurer and collector of taxes, negligence of other officers of the city in not discovering defalcations of the treasurer which constituted the breaches of the bond is no defense.

A bond given to a city by its treasurer and collector of taxes, which by its terms is a continuing liability during the current term of that officer and successive terms for which he is elected and in which he serves, is terminated by the giving of a new bond of the same character.

In an action by a city against a surety upon a bond given by its treasurer and collector of taxes, it appeared that the treasurer had embezzled large sums of money which were in his possession as treasurer, and then fraudulently had issued notes of the city which he had power to negotiate as a borrowing agent of the city and had applied the proceeds thereof to cover his direct embezzlements as treasurer. The defendant contended that the wrongdoing which had resulted in financial harm to the city was not a wrongdoing of the treasurer or collector of taxes, and therefore that the defendant was not liable. *Held,* that the character of the original embezzlement of the treasurer, which constituted a breach of the bond, was not changed by its temporary concealment through his fraudulent acts as borrowing agent of the city.

Although, in an action against the surety upon a bond for a penal sum conditioned upon the proper performance of his duties by a public official, if there is a verdict for the plaintiff, judgment is entered for the penal sum of the bond and the amount of the execution is determined later, there is no reason for not determining the amount for which execution should issue at the same time with the question of liability when the record is ripe for it. Such a case arises when the record shows that the loss sustained by the obligee far exceeds the penal sum of the bond.

In an action by a city against a surety upon the bond of its treasurer and collector of taxes, it appeared that the treasurer had embezzled a large amount of money which he had replaced with the proceeds of a note which he had negotiated fraudulently as borrowing agent of the city, and that at the time of the trial of the action upon the bond, an action against the city upon such note was pending. *Held,* that the initial embezzlement constituted a breach of the bond and therefore that judgment should be entered for the plaintiff, and that the amount for which execution should issue should be determined after the termination of the action upon the note.

CONTRACT in three counts upon three bonds, upon each of which the defendant was a surety to the amount of $2,000, which

were given to the plaintiff by James V. Felker, its treasurer and collector of taxes, and are described in the opinion. The first count was upon a bond dated January 1, 1894; the second, as amended, upon a bond dated January 1, 1898, and the third upon a bond dated January 1, 1902. Writ dated July 16, 1908.

The case was referred to Henry T. Lummus, Esquire, as auditor, who found for the plaintiff on the second and third counts for the full amount of $2,000 and interest from the date of the writ. As to the first count, he found " that the plaintiff is not entitled to recover . . . unless the bonds are to be taken as cumulative and not substitutional, in which case the plaintiff is entitled to recover " $2,000 and interest.

That part of the report of the auditor which related to liability under the first count was as follows:

" It appears that Felker embezzled $86,800 during his career as city treasurer. It appears, however, except for the $80,000 of fraudulent notes [described in the opinion] outstanding on May 11, 1906, that the only amount the city could lose was $6,800. Any loss beyond the $6,800 must come through the payment of fraudulent notes. The city has paid on a judgment the sum of $65,632.26, which judgment was founded on notes, the principal of which amounted to $55,000. Another fraudulent note for $25,000 remains outstanding, upon which a suit is now pending against the city in the courts of this State. . . . If the city does not have to pay that note, the loss resulting from Felker's embezzlements will be considerably reduced by reason of the money obtained by him upon that note and turned into the city treasury. . . . But it seems that the sureties are entitled to the benefit of Felker's payment into the treasury so far as it makes good his embezzlement, no matter how he obtained the money to make the payment. And it seems that such payment would be applied to satisfy the earlier items of embezzlement, with the result that more than $14,000 of the earlier items would be satisfied. . . . Such a result would discharge all liability under the bond of January 1, 1894, if the bonds are held to be substitutional and not cumulative.

" The vital point in this connection is, whether the outstanding $25,000 note can be collected from the city. There was no evidence before me on that point, other than that stated in this

report. It seems clear that the burden of proof is upon the plaintiff to show a breach of the bonds, as well as the amount of damage resulting from such breach. . . . Ordinarily these two questions are taken up separately . . . but in the present case there seems to be no doubt that the full $2,000 can be recovered upon each bond in this case, if anything can be . . . so that any hearing on the assessment of damages seems unnecessary. The burden being on the plaintiff to prove a breach of each bond, I am unable to find from the evidence before me that the outstanding note for $25,000 will or can ever be collected from the city, or that there is any shortage in the official accounts of said Felker for the period after the giving of the bond of January 1, 1894, and before the giving of the bond of January 1, 1898."

The case was heard by *Raymond*, J., the parties agreeing that the facts stated in the auditor's report were true, and no other evidence being introduced. The judge " ruled *pro forma* in accordance with the auditor's rulings " and reported the case for determination by this court.

Other facts are stated in the opinion.

*R. G. Dodge*, (*A. Withington* with him,) for the plaintiff.

*J. P. Sweeney*, (*J. F. Hannon* with him,) for the defendant.

RUGG, J. This is an action against one of the sureties upon three several bonds, dated respectively January 1, 1894, January 1, 1898, and January 1, 1902, given to the plaintiff city by one Felker, its treasurer and collector of taxes from 1883 to 1906, who embezzled large sums from the plaintiff in and subsequent to 1896.

The bonds are identical in the condition which, after reciting the election of Felker to the office " for the current municipal year," provides that if he " shall well and truly perform all of the duties and responsibilities which devolve upon him by virtue of his acceptance of the two offices aforesaid during the term for which he has been elected and for such further term or terms or portion of a term for which he may be elected or for which he may serve and if the said James V. Felker shall annually not later than the first Monday of February, obtain the approval of the mayor and aldermen of said city of Newburyport, then this obligation shall be void, otherwise it shall remain in full force."

1. The bond is aptly phrased to express a continuing obligation for the current year and for each successive year of continuous elections to or service in the offices named by the principal obligor. There can be no doubt of its binding force in this regard. *Chelmsford Co.* v. *Demarest*, 7 Gray, 1, 3. *Middlesex Manuf. Co.* v. *Lawrence*, 1 Allen, 339. *Lexington & West Cambridge Railroad* v. *Elwell*, 8 Allen, 371. *Singer Manuf. Co.* v. *Reynolds*, 168 Mass. 588, and cases cited at page 590. *O'Brien* v. *Murphy*, 175 Mass. 253. But it is contended that the language in the bond to the effect that Felker shall annually " obtain the approval of the mayor and aldermen " interposes as a condition precedent to the springing into being of liability under subsequent elections a renewed annual approval of the bond, and that accordingly his failure to comply with this condition prevents the continuing obligation feature of the bond from becoming vital and effective. While perhaps an instrument might be so framed as to express this purpose, the language of this condition does not do so. The meaning of this clause is not plain. It may perhaps be construed to require Felker to get an approval of himself, that is an auditing and an expression of satisfaction with his accounts, or that the bond should be presented anew to the proper city board as additional security to the general sureties in the event of the death or impaired financial standing of any of them. But whatever its exact significance, it does not purport to cut down the continuity of obligation unequivocally set forth in the earlier part of the sentence. It does not state a limitation upon liability, but a requirement of the doing of something by Felker, default in performance of which raises an additional ground of liability on the part of the sureties. There is no ground for reversing the literal and grammatical meaning of words in order to effectuate a mere conjecture based upon a subsequent unanticipated event as to what might have been the intent of the parties in drafting a somewhat obscure sentence. These bonds expressed an obligation to the plaintiff arising upon each successive election to office of the principal obligor.

2. Although the statute and ordinance required bonds to be given satisfactory to and approved by the mayor and board of aldermen, it is not necessary to decide whether these were so

approved for the reason that they were valid as common law obligations.   *Farr* v. *Rouillard*, 172 Mass. 303, 305, and cases cited.

3. The negligence of other officers of the plaintiff in not discovering the defalcations of Felker is no defense to this action. *Hudson* v. *Miles*, 185 Mass. 582, 587.

4. The bonds are not cumulative, but substitutional in their nature.   It often happens that when a new bond is given voluntarily and unqualifiedly, not in accordance with a requirement of statute, ordinance or by-law, but by reason of agreement or in response to demand or on account of changed conditions or in other ways without compulsion it is held to be concurrent with previous like obligations.   *Forbes* v. *Harrington*, 171 Mass. 386, and *Hudson* v. *Miles*, 185 Mass. 582, 587, illustrate this principle.   But these bonds were given by the incumbent of a public office which by law must be filled by an annual election.   It requires plain and definite language to extend liability beyond the term of office for which the bond is given.   When expressly continuing to future official terms, the nature of the sureties' liability on such obligations is such that it ought not to be stretched beyond its fair import.   It was an implied condition growing out of the character of the offices held, and the general provisions of law touching them, that a new bond executed, delivered and approved by the proper authorities upon a new election should put an end to liability upon the old bond for defaults accruing thereafter.   See *Richardson School Fund* v. *Dean*, 130 Mass. 242, 244.

5. The attempt has been made by the defendant to distinguish the capacities in which Felker injured the city, and to fix the wrongdoing which resulted in financial harm to the city upon him in some other capacity than that of treasurer.   It is urged that he covered his direct embezzlements with the proceeds of notes which he was enabled to negotiate as a borrowing agent of the city under the authority of ordinance, and that his misappropriations in this capacity were not made as treasurer, and hence the defendant is not liable.   But according to the facts found Felker took the money of the city either by drawing checks upon its bank deposits or by filching the cash from its drawer.   That he succeeded in temporarily concealing his shortage by proceeds

of notes in the name of the city, which he in fact had no right to issue, does not affect the character of his initial embezzlement. The essence of the transactions cannot be changed in this way. All that he did was in violation of his duty as treasurer. As there has been recovery against the city upon a considerable amount of these notes which were fraudulently put out by Felker, the city has been left as it was at the first, defrauded by the original embezzlement. Each bond is a security for all that was stolen during the period covered by it.

6. Frequently in cases of this sort judgment is entered for the penal sum of the bond, and the amount of the execution is determined later. *Choate* v. *Arrington*, 116 Mass. 552. But there is no reason for not determining the amount for which execution should issue at the same time with the question of liability when the record is ripe for it. *Hudson* v. *Miles*, 185 Mass. 582, 588.

The loss to the city arising from the breach of the bonds of 1898 and of 1902 far exceeds the penal sum. Hence upon the counts on these bonds the plaintiff is entitled to recover the full penal sum, to wit, $4,000, with interest from the date of the writ.

It is plain also that there was a breach of the bond of 1894. Embezzlements occurred during the period covered by it. In any event judgment should be entered for a technical breach. Upon this point the only question is whether restitution was made from the proceeds of a $25,000 note wrongfully issued by Felker, the proceeds of which placed to the credit of the city helped to conceal his deficits. Action against the city upon that note is pending. Recovery has been had against the city upon several notes similar in all respects to the one in suit. *Citizens' Savings Bank* v. *Newburyport*, 169 Fed. Rep. 766. The plaintiff made out a *prima facie* case by showing a breach of the bond. Such case is not met by showing a restitution made from the proceeds of several notes wrongfully issued by the treasurer in the name of the city, all but one of which the city has been compelled to pay and is defendant in a pending action upon that one. *Temple* v. *Phelps*, 193 Mass. 297, 302. The exact loss of the plaintiff cannot be determined until the conclusion of that litigation. But the plaintiff is entitled to a judgment upon a technical breach in the condition of the bond. The amount for which

execution ought to issue on this bond should be settled after the end of the action upon the $25,000 note.

Let the entry be

> *Judgment for the plaintiff upon the first, second and third counts; execution to issue upon the second and third counts; amount for which execution should issue on the first count to be determined later.*