ROBERT E. MAGUIRE *vs.* PAN-AMERICAN AMUSEMENT COMPANY & others.

Suffolk. November 23, 24, 1911. — January 9, 1912.

Present: RUGG, C. J., HAMMOND, BRALEY, SHELDON, & DeCOURCY, JJ.

*Bond*, Replevin. *Evidence*, Relevancy, Presumptions and burden of proof, Of value. *Damages*, In action on replevin bond. *Practice, Civil*, Exceptions.

At a trial for the assessment of damages in an action by a deputy sheriff on a replevin bond, where it appeared that the property replevied from the plaintiff had been attached by him in a certain action, the plaintiff, against the objection of the defendants, was allowed to put in evidence the writ, declaration, and execution in the action in which he made the attachment. The presiding judge instructed the jury that the amount of the judgment in that action would not affect the damages to be recovered by the plaintiff, which were to be assessed at the fair market value of the property, and that the papers were admitted only "to show out of what this transaction here arose." *Held*, that the papers relating to the action in which the attachment was made were not admissible, and properly might have been excluded by the judge as being irrelevant matter which could tend only to prejudice the defendants by enhancing damages, but that, there being a presumption that the jury followed the instructions of the judge, it would be assumed that the defendants were not harmed.

At the trial of an action on a replevin bond, in which the damages were to be assessed by the jury, it appeared that the property replevied from the plaintiff had been attached by him as a deputy sheriff and consisted of scenery, cos-

tumes and theatrical properties then being used in a certain play, and that the plaintiff was entitled to recover the fair market value of the property at the date of the final judgment in the action of replevin. There was conflicting evidence as to the value of the scenery, costumes and other property replevied, with and without the playing rights. The defendants asked the presiding judge to rule that the jury could not consider what the value of the property was on the stage as used in the play and that its value was what it would bring at a sheriff's sale at the date of the final judgment. The judge refused to make these rulings. *Held*, that the plaintiff was entitled to have the jury in estimating the value of the property consider the probable conditions that a bidder at a sale of the property might have acquired or might have believed that he could acquire the play or that the owner of the play might have attended the sale as a bidder, and that, the rulings requested having omitted all reference to these considerations, the judge was right in refusing to make them.

Upon the question of the fair market value of personal property, the presiding judge at a trial properly may instruct the jury to disregard testimony as to a sale of the property at auction which is indefinite and uncertain and contains no statement of a definite price.

The limiting of the cross-examination of a witness on collateral issues for the purpose of impeaching his credibility is within the discretion of the presiding judge, to the exercise of which no exception lies.

CONTRACT by a deputy sheriff on a replevin bond. Writ dated May 4, 1906.

In the Superior Court the case first was tried before *Brown*, J., who at the close of the evidence ordered a verdict for the plaintiff in the penal sum of the bond, which was $10,000, and that damages be assessed in the sum of $6,461.50. Both the plaintiff and the defendants alleged exceptions. The exceptions of the plaintiff were overruled and those of the defendants were sustained in a decision of this court reported in 205 Mass. 64.

There was a new trial before *King*, J., at which, among other facts, appeared the following: The plaintiff as a deputy sheriff on September 9, 1902, on a writ issued in an action brought by one Messenger against the Lederer Amusement Company attached certain scenery, costumes and theatrical properties then being used in a musical production or play called "The Wild Rose" at the Colonial Theatre in Boston. On September 11, 1902, the property was taken out of the plaintiff's hands on a writ issued from the Circuit Court of the United States in the District of Massachusetts in an action of replevin brought against the plaintiff by the Pan-American Amusement Company, the alleged purchaser of the property from the Lederer Amusement Company. In

that action the Pan-American Amusement Company, the present defendant, gave to the present plaintiff the bond here sued upon. In the action of replevin, on November 17, 1904, the jury returned a verdict for the present plaintiff as the defendant in replevin. After a judgment of the United States Circuit Court of Appeals affirming the rulings of the Circuit Court, on January 18, 1906, a final judgment was entered in the Circuit Court for the return to the present plaintiff of all the property replevied and for damages and costs. On February 16, 1906, execution was issued and on April 20, 1906, was returned to court in no part satisfied.

The plaintiff offered in evidence the writ, declaration, execution and alias execution in the action of Messenger *v.* Lederer Amusement Company. The defendants objected to the admission of this evidence on the ground that the action was not between the same parties as those in the present action; that it was immaterial; and that such evidence might affect the verdict of the jury. The judge admitted the evidence, and the defendants excepted. The instructions of the judge in regard to this evidence and the purpose to which it was limited are stated in the opinion.

One Lederer, who was the managing director of the Lederer Amusement Company, was called by the defendants as a witness. On his direct examination he was asked the question, "I think there is one more question, Mr. Lederer, with reference to the production of 'The Wild Rose,' and all plays for that matter. After the play is produced what do you have to do, or what did you do for the purpose of procuring bookings or places to perform this play?" The counsel for the defendants stated " that he intended to show by that that it is necessary to bring a play to a sort of a clearing house where plays are routed throughout the United States; that all plays cannot be routed; that unless a play has the trade mark of a prominent manager, or a successful manager, or has intrinsic merit itself, . . . a route cannot be had. So, if this property was taken up by somebody else who was not a theatrical manager, had no standing, who would allow the personnel of the company to deteriorate, could not keep it up to standard, they could not get any bookings at all and therefore it would be useless." The plaintiff objected to the question and the judge sustained the objection. The defendants excepted. The indefinite character of the direct testimony of this witness in regard to

a sale at auction, which the judge instructed the jury to disregard, and also the character of the evidence admitted, against the objection of the defendants, on his cross-examination for the purpose of contradicting his statements, are indicated sufficiently in the opinion.

There was conflicting evidence from various witnesses as to the value of the costumes, scenery and other property replevied, with and without the playing rights.

At the close of the evidence, the defendants asked the judge to make nine rulings, of which those that are material were as follows:

"1. The jury shall not consider what the value of the property was on the stage and in use in the production of the play of 'The Wild Rose' on the tenth day of September, 1902.

"2. The jury shall not consider what the value of the property was to the Pan-American Amusement Company on September 10, 1902, in their using it for producing purposes in connection with the production of 'The Wild Rose.'"

"4. The value of the goods which can be recovered in this action is what they would bring at sheriff's sale in Boston, on January 18, 1906."

The judge refused to make these rulings.

The jury returned a verdict for the plaintiff in the penal sum of the bond, and assessed damages in the sum of $7,350.50. The defendants alleged exceptions.

*J. F. Lynch,* for the defendants.

*E. R. Anderson,* (*F. M. Whitman* with him,) for the plaintiff.

BRALEY, J.   The defendants were not liable for the penal sum, unless a breach of the replevin bond declared on was proved; and when the plaintiff had introduced evidence, that at the trial of the action he recovered judgment for damages and for a return of the property, and that the execution which issued thereon had been returned in no part satisfied, the jury, without further testimony, would have been warranted in finding that the damages had not been satisfied or the property given up, and consequently the condition had been broken. *Parker* v. *Simonds,* 8 Met. 205. *Wright* v. *Quirk,* 105 Mass. 44. *Capen* v. *Bartlett,* 153 Mass. 346.

The plaintiff's cause of action not having depended on the result of the action in which as a deputy sheriff he attached the property

replevied, the writ, declaration, execution, and alias execution in that litigation, should not have been admitted. If the defendants had prevailed, the plaintiff still would have been accountable to the true owner, and his cause of action depended in the present action upon the instrument. *Moore* v. *Quirk,* 105 Mass. 49. The trial court well might have paused before admitting evidence which could only tend to prejudice the defendants by enhancing damages. But, the jury having been instructed that the amount of the judgment in the original action would not affect damages, which were to be assessed at the fair market value of the property, and that the papers were admitted only "to show out of what this transaction here arose," we are inclined to hold with some hesitation that it is to be presumed that the instructions were followed, and the defendants were not harmed. *Burghardt* v. *Van Deusen,* 4 Allen, 374. *Warner* v. *Jones,* 140 Mass. 216. *Dixon* v. *Smith,* 181 Mass. 218. *Troy* v. *Rudnick,* 198 Mass. 563, 568, 569.

Under a practice which was said to be anomalous in *Hudson* v. *Miles,* 185 Mass. 582, 588, the jury also, if they found a breach, were to determine for what amount execution should issue. *Newburyport* v. *Davis,* 209 Mass. 126, 132. R. L. c. 177, §§ 9, 10. The defendants obligated themselves to restore the property in the same condition as of the time when it was taken, and the measure of damages recoverable was stated when this case was first before us, by Sheldon, J. "The plaintiff is entitled to the fair market value of the property in that order and condition as of the time when it should have been delivered to him, that is, on the date of the final judgment in the replevin suit." *Maguire* v. *Pan-American Amusement Co.* 205 Mass. 64, 73.

The property consisted of "sceneries, costumes and properties" adapted for, and used in, the presentation of a musical production or play, entitled "The Wild Rose." Its value when thus employed might be much greater than the price it would bring in the market at an auction sale independently of the play, which the evidence does not positively show the purchaser could control and present to the public. It cannot be said, however, that there was no market value, as was held in *Green* v. *Boston & Lowell Railroad,* 128 Mass. 221, 226, where a family portrait had been lost by the carrier; and the exceptions state, that "there was conflicting evidence from va-

rious witnesses as to the value of the costumes, scenery and other property replevied, with and without the playing rights." The fair market value "is at least the highest price which a normal purchaser not under peculiar compulsion will pay at the time and place in question in order to get the thing," said Holmes, J., in *Bradley* v. *Hooker*, 175 Mass. 142, 143, which was followed in *National Bank of Commerce* v. *New Bedford*, 175 Mass. 257, 262, and *East Tennessee Land Co.* v. *Leeson*, 183 Mass. 37. A purchaser might buy the whole with the intention of adapting the property to other uses, or he might have acquired, or believed that he could acquire the play, and accordingly would be willing to pay an enhanced price; or the owners of the play at the date of the attachment if a sale had been held, might have attended and bid. The plaintiff was entitled to have the jury consider these probable conditions in their estimation of market value, and the first, second and fourth requests having omitted any reference to them, were insufficient. *Stevens* v. *Tuite*, 104 Mass. 328, 331, 336.

The success or failure of the play as a theatrical enterprise, ordinarily would depend largely upon proper management, and evidence of what would have to be done for its successful presentation had a direct bearing upon the value of the property if purchased to be used in the business. But the question asked of the witness Lederer, not having been limited to the play in question, was irrelevant. The further testimony of this witness as to the sale at auction, having been indefinite and uncertain with no statement of a definite price, was properly withdrawn from the jury and excluded. It is not an approximate but the substantially accurate result in money obtained for property sold which furnishes the criterion and imparts evidentiary value. *Atherton* v. *Emerson*, 199 Mass. 199, 210, and cases cited.

It also was discretionary as to how far the credibility of this witness could be impeached by cross-examination on collateral issues, and the ruling admitting in evidence for this purpose his report to the directors of the company which bore his name, of its financial condition resulting from the production of the play, was not subject to exception. *Jennings* v. *Rooney*, 183 Mass. 577, 579.

The fifth and sixth requests were waived at the argument, and the third, seventh, eighth and ninth, and the exceptions

to the instructions, not having been argued, must be treated as waived.

We have considered all of the exceptions relied on by the defendants, and are of opinion for the reasons given, that they should be overruled.

*So ordered.*