NORWAY PLAINS SAVINGS BANK *vs.* JOSEPH B. MOORS.

Suffolk. Nov. 15, 16, 1882. — Jan. 9, 1883. W. ALLEN, J., absent. HOLMES, J., did not sit.

A. made a contract with B., by the terms of which B. was to execute a mortgage of land to a bank, and to give to A. an order on the bank for the money obtained by means of the mortgage, and to build houses on the land in a specified manner and complete them within a certain time. A. was to advance money from time to time to B., according to the progress and quality of the work, and to retain the money received from the bank as collateral security for the money advanced by him, and for interest and commissions. The bank had previously agreed to lend B. the money, taking a mortgage as security. A. then made a contract with the bank, which, after reciting these facts, and stating that the money was to be paid A. as the work progressed, contained a covenant on the part of A. that the houses should cost not less than a certain sum each, and that B. should "complete and finish" the houses in a good and workmanlike manner. At the time this contract was made, the foundations of the houses had been put in, but the agents of the bank had no knowledge of their condition. *Held*, that A. was liable to the bank for any loss caused to it by reason of the foundations being put in in an unworkmanlike manner.

A bank took from B. separate mortgages on several lots of land, and entered into a contract with A., by which A. agreed that the houses to be built upon the land should cost a certain sum each, and be built in a good and workmanlike manner. The bank agreed, upon A.'s request, to assign to him any or all of the mortgages, upon receiving from him full payment of the sums advanced thereon and interest. *Held*, that it was no defence to an action by the bank against A., for breach of the contract as to the remaining parcels, that the bank, before any demand by A. for a transfer of the mortgages, had sold one of the parcels of land, under the power contained in the mortgage of that parcel.

A. made a contract with a bank, which, after reciting that the bank was about to lend to B. a certain sum of money upon mortgages of certain lots of land and buildings in process of erection and to be erected thereon, and that B. had given A. an order on the bank for the money, contained a covenant on the part of A. that B. should complete the houses in a workmanlike manner at a certain cost each, and a clause whereby A. further guaranteed that the houses should be finished within a certain time; and that A. might, for his security, take from the bank an assignment of the mortgages, on paying the sums due thereon and interest. The foundations of the houses were defective to A.'s knowledge, and the houses did not cost as much as it was agreed that they should cost. The bank, in ignorance of these facts, made the last payment it had agreed to make, and subsequently agreed to surrender the contract if there were no liens on the

property. The bank did not surrender the contract. At both of these times the property was of sufficient value to save the bank harmless, and to indemnify A. if he had taken the mortgages. *Held*, in an action by the bank against A. for breach of the contract, that A. was not a mere guarantor, and that the acts of the bank did not constitute such laches as would prevent it from recovering for defects in the foundations.

If a bank lends money on a mortgage of land and houses to be built thereon in a workmanlike manner, and at a certain cost each, and a third person covenants with the bank that the houses shall be so built, in an action by the bank against such third person the measure of damages is so much of the difference between the value of the houses as built and their value if built according to the contract, as is sufficient with the value of the houses as built to pay the mortgage debt and interest at the time the houses were finished, or as soon afterwards as the bank had notice of the defects, or might have had notice with the exercise of reasonable diligence.

CONTRACT for breach of the following agreement, under seal, dated July 1, 1871, and executed by the plaintiff, as the party of the first part, and by the defendant, as the party of the second part: " Whereas the party of the first part is about to loan to H. F. Rice and J. Q. Hanson the sum of fifty-eight thousand dollars, upon eleven different mortgages of eleven different lots of land and buildings in process of erection and to be erected thereon; and whereas it is proposed that a large part of said sum is to be advanced on said mortgages before the completion of said houses; and whereas the said Rice and Hanson have given to said Moors an order for the payments of the amounts so to be paid by said corporation as the same shall become due: Now, therefore, in consideration of the premises and the covenants of said Moors hereinafter contained, said party of the first part covenants and agrees with said Moors and his assigns, that it will, upon his request, advance and pay to him, the said Moors, from time to time, according to the schedule of payments hereto annexed, such amounts as he shall require on account of said loan of fifty-eight thousand dollars, until the whole sum of fifty-eight thousand dollars shall have been paid to him; and said Moors, in consideration thereof, covenants and agrees with said party of the first part, that said Rice and Hanson shall complete and finish, as soon as may be, in good, workmanlike manner, and with all reasonable diligence, said eleven houses, three of which, mortgaged each for six thousand dollars, shall cost not less than ten thousand each, and the other eight, mortgaged each for five thousand dollars, shall cost not less than nine thousand

dollars each, and that all mechanics' or other liens shall be discharged within forty days after the same are completed; and said Moors further guarantees said corporation that said houses shall be completed within one year from the date hereof. It is further agreed by and between the parties, that if said Moors should deem it necessary to his own security to take an assignment of said notes and mortgages, or any of them, the said corporation will, upon his request and at his own proper cost, assign and transfer to him any or all of said mortgages and the several notes for the security of which they were given, upon receiving from him, the said Moors, full payment of the several sums advanced thereon, with all accrued interest. Said land is situated on West Clarendon Street and a court or street leading southerly therefrom in said Boston. Said houses are to be insured, payable in case of loss to said corporation as mortgagees, and the whole amount of each of said mortgages shall be upon interest from and after the time of making. the first payment thereon."

Annexed to the contract was a schedule of four payments to be made on each lot, the first payment to be when the roof should be boarded in, and the last when the house should be finished. Writ dated December 3, 1875.

The case was tried in this court, without a jury, upon the report of an auditor, before *W. Allen*, J., who found for the plaintiff in the sum of $19,119.72. Both parties alleged exceptions, and the judge reported the case for the determination of the full court. The facts appear in the opinion.

*E. Avery & E. P. Brown*, for the plaintiff.

*G. O. Shattuck*, for the defendant.

COLBURN, J. In order to determine the questions raised in this case, it is necessary to understand certain facts, which were found by the judge who tried the case, as appears by the report.

As early as May 16, 1871, Rice and Hanson made application to the defendant to advance to them $58,000, on eleven houses which they proposed to build on a lot of land in Boston, which they had bargained for, but to which they did not acquire title until August 22, 1871. The defendant made a written agreement with Rice and Hanson, which, though dated May 16, 1871,

could not have been written until after July 1, 1871, as it refers to facts which did not exist and transactions which did not occur until after that date, and was doubtless designed to express in writing the results which had from time to time been reached, in the negotiations between the parties, which had begun as early as May 16. The defendant agreed to advance the money, upon the terms and conditions set out at length in said written agreement, among which were the following: Rice and Hanson were to execute the eleven mortgages to the plaintiff, give the defendant an order on the plaintiff for all money to be lent by the plaintiff on said mortgages, execute certain second mortgages to the defendant, as further security to him, forthwith commence the erection of the houses and complete them, in a certain manner, within a certain time, at a certain cost for each house. All money received by the defendant from the plaintiff was, by the terms of this agreement, to be held by him, as collateral security to repay him for any sums of money advanced by him to Rice and Hanson, together with interest and certain commissions which Rice and Hanson agreed to pay him. The defendant had full discretion, in making the advances, with reference to the progress and quality of the work.

The defendant made application to the plaintiff for the loan, in June 1871, submitting to the plaintiff a plan and proposals; and, on June 19, the plaintiff voted to make the loan " on property described in the plan and proposals submitted to us, when the buildings are finished up and completed, and ready for occupancy." At some time after June 19, probably before July 1, but certainly before July 10, the terms of the agreement declared on were settled, as the report finds that this agreement was executed on July 10, 1871. It does not appear that any agent of the plaintiff made any examination of the work which had been done when this agreement was entered into, and, so far as the report finds, no such agent had been inside any of the houses, until they were nearly finished.

Though the mortgages were to be given by Rice and Hanson, it is obvious that the defendant conducted the whole negotiation, and, under the agreement with Rice and Hanson, controlled the whole business, as between himself and them, and had full knowledge of what had been done upon the land.

1. The report finds that prior to July 1, 1871, the foundations of all the houses had been completed, and the walls were up one story; and the first question presented is, whether the defendant is liable under his agreement for defects in the foundations of the houses. We are of opinion that the foundations were parts of the houses; and that, having reference to the position of the parties, the purpose they had in view, their relative knowledge of what had been done, and how it had been done, the stipulation in the agreement in suit, that " Rice and Hanson shall complete and finish, as soon as may be, in good, workmanlike manner," the eleven houses, at a certain cost for each, applied to the entire structures, including the foundations; that the parties intended by the language used, and the defendant agreed, that the plaintiff, in consideration of its advance of money on unfinished houses, should be placed, in the end, in the same position it would have occupied if it had made the loan in accordance with the vote of June 19, " on property described in the plan and proposals submitted to us, when the buildings are finished up and completed and ready for occupancy." A person may agree to complete and finish a house before it is begun, or in any stage of the process of construction, and whether the agreement relates to the whole structure, or only to what apparently remains to be done, when the agreement is silent upon the subject, must be determined by the language used, as applied to the facts and surrounding circumstances in each particular case. We see nothing in the agreement, or in any facts or circumstances in this case, to indicate that the parties understood that all that had been done was accepted by the plaintiff, so that the stipulation in the agreement related only to the residue of the work. The facts and surrounding circumstances in this case are widely different from those in the case of *Hyannis Savings Bank* v. *Moors*, 120 Mass. 459.

2. In November 1873, the plaintiff sold one of the houses, under the power of sale contained in the mortgage of that house, for non-payment of interest; and the next question is whether, by this sale, the defendant was released from his liability on the agreement; and we are of opinion that he was not. He made no request for an assignment of any of the mortgages, and the plaintiff was only to make such assignment upon his request, and

his deeming it necessary for his security to take such assignment. The full amount had been advanced by the plaintiff upon each mortgage, the house covered by each mortgage was only held under the mortgage for the amount of principal and interest due on that mortgage, and if the plaintiff saw fit to sell one of the houses under the mortgage thereon, and relieve the defendant from all liability on that house, he has no cause to complain.

3. The plaintiff made its last payments under the contract on May 29, 1872, and on August 3, 1872, offered to surrender the agreement if there were no liens on the property. The plaintiff did not surrender the agreement. The defendant contends that he was a mere guarantor, and that the plaintiff by these acts, and by not notifying him that it should hold him responsible for the breach of the contract, in effect said to the defendant that it was satisfied that the contract had been performed, and he was thereby induced not to avail himself of his right to take an assignment of the mortgages at a time when the property was amply sufficient to protect him from loss; and that the plaintiff has been guilty of such laches as will prevent its maintaining the action. But the defendant was in no proper sense a mere guarantor. He was the chief actor in the whole matter, for a liberal compensation. He knew of the defects in the foundations and the deficiencies in the houses; he had paid for the foundations, getting a deduction of twenty per cent from the contract price on account of deficiency in the work, and he knew that the houses had only cost about one half of the sum he had agreed with the plaintiff they should cost. The report does not find that the plaintiff accepted the houses, and finds that it had no knowledge that the foundations were defective until October 22, 1873. We see no error in law in the ruling of the judge, that the acts of the plaintiff would not prevent it from recovering for the defects in the foundations.

4. The only remaining question is as to the rule of damages. If the houses had been built in the manner and at the cost required by the agreement, the obligation of the defendant would have been fully performed; he was in no way responsible for the value of the houses, if so built, or their sufficiency as security for the mortgages.

The measure of damages is the difference between the value of the houses as they were in fact built, and the value they would have had if built in conformity to the agreement, or so much of this difference as would have been necessary, with the value of the houses as built, to have paid the mortgage debt and interest then due ; and the time for determining these values was the time when the defendant left the houses, as finished, or as soon afterwards as the plaintiff had notice of the defects and deficiencies, or might have had such notice, by the exercise of reasonable diligence.

The report finds that the plaintiff first had notice of the defects in the foundations, which is the chief defect complained of, on October 22, 1873, and there is nothing in the report to indicate that reasonable diligence on the plaintiff's part would have led to earlier notice of this defect. The report finds that the values of the houses remained the same from July 1, 1872, to the autumn of 1873 ; and as the plaintiff is charged with that value, the time of assessment of damages, between those limits, becomes comparatively unimportant. As the plaintiff appears to have made no special objection to the houses on account of cost, and made no request for a finding of the value the houses would have had if they had cost the sums agreed upon, the plaintiff should perhaps have been held to have waived any objection on that account, especially as the result is not thereby affected. Assuming the objection to the cost to have been waived, then the measure of damages was so much of the difference in value between the houses as they were in fact built, and the value they would have had if the foundations had been properly constructed, as added to the value of the houses as in fact built was sufficient to pay the principal of the mortgage debt and the interest due thereon, October 22, 1873. The judge did not in terms adopt this rule, as he fixed no maximum liability ; but, under the facts in this case, it was not necessary that he should, as the auditor finds that the houses on the street would have been worth $7000 each, and those on the court $6000 each, on good foundations, which was more than sufficient to have paid the mortgage debt, with all interest due thereon, on October 22, 1873, the mortgages on the houses on the street being $6000, and on those on the court $5000. In holding that the plaintiff

should be charged with the value of the houses, with their defects known, as of October 22, 1873, we assume, as the report and briefs of counsel assume, though there was no direct finding upon this point, that there had been a breach of condition, so that the houses could have been sold under the mortgages at that time. If the houses had been then sold, the plaintiff would have been chargeable with only the amounts received from the sales; but, having neglected to sell, or to make any demand upon the defendant for nearly two years after October 22, 1873, during which the houses, irrespective of defects, had largely decreased in value, the defendant cannot be charged with this decrease.                                *Judgment on the finding.*