PROVINCE SECURITIES CORPORATION *vs.* MARYLAND CASUALTY COMPANY.

MARYLAND CASUALTY COMPANY *vs.* PROVINCE SECURITIES CORPORATION.

Suffolk. May 20, 21, 1929. — October 18, 1929.

Present: RUGG, C.J., CROSBY, PIERCE, SANDERSON, & FIELD, JJ.

*Surety. Contract,* Validity, Construction. *Bond. Damages,* In contract.

Upon the mortgagee under a construction mortgage of real estate refusing to make payments to the mortgagor at more frequent intervals than stated in the construction loan agreement, the mortgagor offered to procure a bond, running to the mortgagee as obligee, assuring construction of the building according to the construction loan agreement, and the mortgagee agreed to the change of times of payments to the mortgagor upon such bond being given. The mortgagor then solicited such

a bond from a surety company. The mortgagee had no part in negotiations with the surety company for the bond. Before becoming surety, the company caused inquiry to be made respecting the then condition of the building and its probable cost and, through certain bankers and others, respecting the financial standing and responsibility of the mortgagor, and knew of the mortgage and the note secured thereby and of the construction loan agreement, but made no inquiries of the mortgagee as to the mortgagor, his resources and his handling of the undertaking as to the building, the construction loan agreement and the mortgage. The mortgagee did not disclose to the surety company any fact bearing on his relations with the mortgagor or upon the mortgagor's financial ability to complete the construction of the building. The bond was given and the construction loan agreement was amended as promised. In an action by the mortgagee against the surety company upon the bond after the mortgagor had failed to construct the building as agreed, the company contended that it was not liable because the mortgagee had not disclosed to it before the bond was given certain matters relating to borrowings by the mortgagor, delays in the progress of the construction work, failure by the mortgagor to pay interest, and the fact that, after the giving of the bond, the mortgagor, out of $10,000 he then received from the mortgagee, paid back $6,000 to the mortgagee for overdue interest. The action was heard by a judge without a jury who found for the plaintiff. On exceptions by the defendant, it was *held*, that

(1) A finding and ruling by the trial judge that the execution of the bond by the defendant was not obtained or procured by the fraud and misrepresentations of the plaintiff were warranted;

(2) A further finding and ruling that at the time of the execution of the bond the plaintiff did not have knowledge of facts unknown to the defendant and material to the risk to be assumed by it, which in good faith the plaintiff should have communicated to the defendant prior to the execution of the bond but failed so to communicate, were warranted;

(3) A further finding and ruling that the bond "was a subsisting obligation binding upon the defendant at the time when said suit was begun, and that there has been a breach of the condition of said bond" were warranted.

The bond in the action above described was conditioned upon the completion of the building in accordance with the provisions of the construction loan agreement. The mortgagor abandoned the building on April 7. Up to that time the mortgagee had advanced $191,150. The construction loan mortgage was foreclosed by sale on July 13 and the property was bid in by a purchaser representing the mortgagee for $145,750. At that date the amount due on the mortgage was $196,500. The judge found that, if the building had been completed, its value would have been greatly in excess of $200,000, and found and ruled "that the amount due and payable in equity and good conscience for the breach of the condition of the bond" was the difference between the amount realized at the foreclosure sale, "less the costs, charges and expenses incurred or sustained by the plaintiff by reason of the breach

of the condition of said mortgage and the further sum of one per centum of the purchase money in accordance with the terms thereof," "and the value the premises would have had if the building had been completed as agreed or so much of said difference as with the amount realized in the foreclosure would equal the amount then due and payable by the principals to the plaintiff upon the note secured by said mortgage;" found that $2,498 should be deducted from the amount realized at the foreclosure sale as "costs, charges and expenses incurred by the plaintiff and one per centum of the purchase money," assessed as damages the difference between $196,500 and $143,252, namely $53,248, and ordered execution therefor. The defendant alleged exceptions. *Held*, that

(1) The general rule is, that the measure of the damages for which, under G. L. c. 235, §§ 9, 10, an execution should issue in favor of the mortgagee in an action of the character above described is the difference between the value of the premises at the date of the breach of the bond and their value if the building had been constructed as agreed, or so much thereof as would have been necessary with the value of the building as it was left to have paid the mortgage debt with interest thereon;

(2) The judge erred in determining the damages as of July 15 instead of as of April 7, the time of the breach of the bond;

(3) While the amount realized at foreclosure sale was evidence of the value of the premises in their uncompleted condition to be considered with other evidence, it was not conclusive;

(4) In the circumstances of this case, the proper measure of damages was the difference, caused by the breach of the bond, and at the time of such breach, between the value of the property as security as it stood at that time and the amount then due on the mortgage;

(5) The plaintiff was not entitled to recover as an element of damages the expenses incurred in the foreclosure proceedings, since the bond was not given to guarantee the payment of the mortgage;

(6) The rule of law adopted by the trial judge was erroneous, the defendant's exceptions were sustained, the judge's findings relating to damages were reversed and the case was remanded for a redetermination of the amount due the plaintiff in equity and good conscience for the breach of the condition of the bond.

Two ACTIONS OF CONTRACT, described in the opinion. Writs dated respectively July 16 and November 22, 1927. The bond, which was the basis of the first action, was executed by the Maryland Casualty Company as surety and by William W. Cherney and David Carlin, Trustees of the Kilsyth Realty Trust, as principals and, exclusive of the *in testimonium* clause, read as follows:

KNOW ALL MEN BY THESE PRESENTS that we, WILLIAM W. CHERNEY AND DAVID CARLIN AS TRUSTEES of the

KILSYTH REALTY TRUST under a declaration of trust dated April 28, 1922, recorded with Suffolk Deeds, Book 4363, Page 594, hereinafter referred to as PRINCIPAL and the MARYLAND CASUALTY COMPANY, a corporation duly organized under the laws of the State of Maryland, and having an usual place of business in Boston, Massachusetts, as SURETY, are held and firmly bound unto the PROVINCE SECURITIES CORPORATION, a corporation duly organized under the laws of the Commonwealth of Massachusetts in the full and just sum of SEVENTY-FIVE THOUSAND DOLLARS ($75,000) for the payment whereof to the said obligees said Principal and Surety bind themselves, their legal representatives, successors and assigns, jointly and severally, by these presents.

Signed, sealed, dated and delivered this third day of August, 1926.

The condition of this obligation is such that

WHEREAS the Province Securities Corporation and said Principal heretofore entered into a written agreement under date of April 1, 1926, and the amendment thereof dated August 4, 1926, reference to which agreement and amendment is hereby made, and which agreement and amendment and all and singular the terms thereof are hereby made a part hereof by reference thereto as fully to all intents and purposes as if set forth in the body hereof, under the terms of which agreement and amendment said Province Securities Corporation agreed to make and the said Principal agreed to take a loan of TWO HUNDRED THOUSAND DOLLARS ($200,000) which loan was secured by a mortgage in the sum of THREE HUNDRED TWENTY-FIVE THOUSAND DOLLARS ($325,000) and was made upon certain terms and conditions more specifically set forth in said agreement; and

WHEREAS the Principal has agreed under the terms of said agreement to erect, construct and complete upon the premises 39–49 Portland Street, Boston, Massachusetts, a nine story and basement fire-proof, mercantile building in accordance with plans and specifications drawn by George N. Jacobs, Architect; and

WHEREAS said Principal has undertaken in said agreement among other things to erect, construct and complete said building, free and clear of and from any and all liens or claims for liens for work or labor performed or materials, machinery or equipment furnished in connection with the construction of said building; and now if the said Principal shall well and truly erect or cause to be erected said building aforesaid, according to all terms, covenants and conditions and requirement of said plans and specifications, in accordance with the terms of said agreement and in accordance with the terms of said mortgage, fully paid for, free and clear of any and all liens or claims for liens or incumbrances arising from claims of architects, mechanics, material, men laborers, or others for work or labor performed or for material, machinery, fixtures or equipment furnished or installed or in or about the erection or construction of said building so that the lien of said mortgage shall now and at all times hereafter be and remain the first lien upon said building and premises and shall indemnify, reimburse and save harmless said obligee, of, from and on account of any and all claims, costs, suits, judgments, counsellors' fees, and damages of whatsoever nature and description that may be incurred or suffered by said obligee on account of any claims for liens as aforesaid and the said Surety will save, hold and keep said obligee whole, free and harmless of and from any and all costs, suits, judgments and counsel fees, claims and damages which may be icurred [*sic*], suffered or permitted because of any default whatsoever on the part of said Principal in keeping, performing or discharging any of the terms, covenants and conditions hereinbefore set forth on the part of the Principal to be kept, performed or discharged or under the terms of said agreement or under the terms of said mortgage, prior to the completion of and the payment of said building, and the said Surety hereby agrees that he will in the event of a default on the part of said Principal make good such default in the same time and in the same manner as the said Principal is obligated to do and

perform and in that event, this obligation shall be void, otherwise to remain in full force, virtue and effect.

This bond is executed and delivered and accepted on express agreement of the parties hereto that

1. The Province Securities Corporation shall have the right to use the whole or any portion of the net proceeds of said loan to make good from time to time any default or defaults of the Principal in its obligations under said contract or on said mortgage to be performed by it, prior to and including the completion of said building.

2. The Surety shall not be entitled to any notice of default but shall be chargeable to the same extent as the Principal with any notice of default on the part of the Principal.

3. Should the building not be completed in accordance with the terms of the agreement and amendment hereinbefore referred to, the Province Securities Corporation shall have the right to complete the building and to apply thereto the proceeds of said loan and to charge the Principal and the Surety for all sums in excess of the net proceeds of said loan but not in any event more than SEVENTY-FIVE THOUSAND DOLLARS ($75,000).

In the Superior Court, the actions were heard together by *Weed,* J., without a jury.

The Maryland Casualty Company asked for the following rulings among others:

"2. It was the duty of the plaintiff, as obligee of the bond sued upon, to disclose to the defendant, as surety, at the time of the execution of said bond, all material facts known to it affecting and tending to increase the risk to be assumed by the defendant, as surety under said bond, although no inquiry was made by the defendant, and if the defendant had no knowledge of said facts the failure of the plaintiff to disclose the same to the defendant releases the defendant from all obligations to the plaintiff as obligee under said bond.

"3. Failure of the obligee in a bond to disclose at or before the time of the execution of said bond, to the surety, material facts known to him affecting and tending to in-

crease the risk to be assumed by the surety, releases the surety from obligation to said obligee under said bond, if the surety had no knowledge of said facts.

"4. In order to release a surety from obligation to the obligee in a bond, it is not necessary for the failure of the obligee to disclose to the surety, at or before the execution of said bond, material facts known to him affecting and tending to increase the risk to be assumed by the surety, to be wilful or intentional, or with a view to any advantage to said obligee; it is sufficient if said facts are not disclosed and are not known by the surety."

"48. Any knowledge possessed by Carl Rudnick, the president of the plaintiff corporation, with reference to the activities of said Kilsyth Realty Trust, or said David Carlin and William W. Cherney, its trustees, is attributable to the plaintiff corporation."

On these requests, the judge ruled as follows:

"Upon all of the evidence, I find and rule that the execution of said bond by the defendant was not obtained and procured by the fraud and misrepresentation of the plaintiff and that the plaintiff, at the time of the execution of said bond, did not have knowledge of the facts material to the risk to be assumed by the defendant, of which the defendant had no knowledge, which in good faith the plaintiff should have communicated to the defendant prior to the execution of said bond and which the plaintiff failed so to do.

"So far as it is material in view of the evidence, I rule as matter of law that the plaintiff was not bound to disclose to the defendant any facts materially affecting the risk assumed by the defendant, the knowledge of which came to the plaintiff subsequent to the execution and delivery of the bond."

Findings and rulings by the trial judge in the first action as to the amount due from the defendant in equity and good conscience were as follows:

"The parties differed widely as to the damages suffered by the plaintiff by reason of the breach of the condition of the bond. The purpose of the bond seems plainly to be to secure to the plaintiff the erection of a building upon the

mortgaged premises in conformity with the plans and specifications incorporated in the construction loan agreement without any default in the mortgage prior to its completion and payment. Had the principals completed such a building fully paid for and free of liens, without any default in the mortgage, the condition of the bond would have been fulfilled. The defendant was in no way responsible for the value of a building so built or its sufficiency as security for the mortgage loan. The plaintiff in express terms was given by the bond the right to use the 'net proceeds' of the loan to make good any default or defaults of the principals, whether under the construction loan agreement or under the mortgage, prior to and including the completion of said building, and if the building was not completed as agreed it might complete the same, applying thereto the 'proceeds' of said loan and charging the principals and the defendant with the excess cost. The construction loan agreement reserved the right to the plaintiff to foreclose for breach of condition of the mortgage 'and in case of a foreclosure all right to any of the above payments (account of the principal of the loan) which shall not have been made, shall absolutely cease and be ended.' It provided further that, if for seven successive days the principals ceased to work upon the building, the plaintiff might take possession of the premises and proceed to complete the building, using all materials found thereon to finish the same, and to charge all money so expended to the account of the loan.

"While the mortgage was long overdue, the plaintiff, with the knowledge and consent of the defendant, was continuing to make advances on account of the loan, and there was no 'default' in the sense in which the word is used in the bond until after April 7, 1927. The building was not then completed as agreed. Thereafter, the plaintiff exercised its undoubted right to foreclose its mortgage for breach of its condition, but took no steps to complete the building until after the title had passed under the foreclosure sale. Had there been no breach of the condition of the mortgage, the plaintiff would have been limited to his right either to recover from the defendant the damages suf-

fered by reason of the default of the principals, measured by the difference between the value of the land and building as it then was and its value if built as agreed or so much thereof as would have been necessary with the value of the building as it then was to have paid the mortgage debt and the interest then due thereon, or to have taken possession of the premises, completed the building, and charged the defendant the excess cost less the balance of the loan remaining unadvanced when the default occurred.

"The plaintiff did not elect either of these alternatives, but there being also a breach of the condition of the mortgage, chose rather to foreclose the same. I rule that thereby the plaintiff is charged with the amount realized at such foreclosure sale less the costs, charges and expenses incurred or sustained by the plaintiff by reason of the breach of the condition of said mortgage and the further sum of one per centum of the purchase money in accordance with the terms thereof, and that the amount due and payable in equity and good conscience for the breach of the condition of the bond is the difference between the sum so ascertained and the value the premises would have had if the building had been completed as agreed or so much of said difference as with the amount realized in the foreclosure would equal the amount then due and payable by the principals to the plaintiff upon the note secured by said mortgage. I find that, if the building had been completed as agreed, the mortgage premises would have been of a value greatly in excess of $200,000.

"I find that on July 15, 1927, the date of said foreclosure sale, there was due and payable by the principals to the plaintiff on said mortgage note,

| | | |
|---|---|---|
| with interest, the sum of . . | | $196,500.00 |
| and that the amount realized from said sale to wit, the sum of | $145,750.00 | |
| less the costs, charges and expenses incurred by the plaintiff and one per centum of the purchase money, to wit, the sum of | 2,498.36 | 143,251.64 |

leaves as the amount so due in
equity and good conscience the
sum of  .    .    .    .    .    .                   $53,248.36
with interest at the rate of six
per cent per annum from July
15, 1927.

"In the first suit, I find that the condition of the bond declared on has been broken, and I order that judgment be entered for the penal sum of the bond with interest from the date of the writ; and I determine that the amount due and payable in equity and good conscience for the breach of the condition of said bond is the sum of $53,248.36, with interest at the rate of six per cent per annum from July 15, 1927, and I award execution therefor."

Other material evidence and facts found by the judge are stated in the opinion.

In the second action, the judge found for the defendant.

Maryland Casualty Company alleged exceptions in both actions.

*H. LeB. Sampson,* (*G. R. Perera* with him,) for Maryland Casualty Company.

*R. G. Dodge,* (*D. Stoneman & L. Curtis, 2d,* with him,) for Province Securities Corporation.

CROSBY, J.    These two actions, involving the same parties, were tried together before a judge of the Superior Court sitting without a jury.    The first is an action of contract brought by the plaintiff as obligee of a bond against the defendant as surety on the bond, which was given for the completion of a building on which the plaintiff held a mortgage.    The principal defence relied on is that the defendant was induced to execute the bond by the fraud of the plaintiff. Judgment was entered in the plaintiff's favor in the penal sum of $75,000 and execution was ordered to issue for $53,248.36 with interest at six per cent from July 15, 1927. In the second action, which is in tort and was brought by the surety company against the obligee, it is alleged that the bond was procured to be signed by the surety through the wrongful failure of the obligee to disclose certain facts which it was its duty to disclose to the surety, and that by reason

of such failure damages resulted. Judgment was ordered for the defendant. The cases are before this court on exceptions saved to the refusal of the trial judge to make certain rulings and to other rulings made by him.

Many of the facts involved in the trial were undisputed. In order fully to understand the questions of law presented it will be necessary to recite certain findings made by the trial judge. The Province Securities Corporation will be referred to as the plaintiff and the Maryland Casualty Company as the defendant. He found that the capital stock of the plaintiff was $5,000, all of which, except two shares, was at the time of the transactions in issue owned by one Benjamin Rudnick who for some years had been engaged in the business of making construction loans and dealing in real estate. Since 1925 his construction loan business has been transacted through the plaintiff. Carl Rudnick, a brother of Benjamin, was the president and a director of the corporation.

William W. Cherney and David Carlin, the principals on the bond here in suit, are builders doing business as the Kilsyth Realty Trust, of which they are, and were throughout the transactions in issue, the trustees, and so far as appears by the evidence they were the chief if not the sole beneficiaries under the trust. Before 1926 they had engaged in several extensive building operations in and about Boston, largely financed by a firm consisting of Benjamin Snyder and John Druker, who were well known as men of substantial financial responsibility. In September, 1925, Joseph M. Druker, a brother of John, as trustee of the Matthew Realty Trust, purchased the land and buildings numbered 39–49 Portland Street, Boston, subject to mortgages aggregating $57,500. Simultaneously with this purchase he gave the firm of Snyder and Druker a six months' mortgage for $200,000 subject to outstanding mortgages. The consideration for this purchase actually paid or in mortgages assumed was $87,000.

Pursuant to an agreement entered into on or about January 30, 1926, Joseph M. Druker, as trustee, conveyed the premises on Portland Street to the Kilsyth Realty Trust by

deed dated April 7, 1926, for $95,000. The Snyder and Druker mortgage was discharged and Cherney and Carlin as trustees of the Kilsyth Realty Trust executed a first mortgage of the premises to the plaintiff for $325,000, the note which it secured being payable in six months. This mortgage was assigned to the Central Trust Company of Cambridge to secure a loan of $50,000 made to the plaintiff, the proceeds of which were used to discharge outstanding encumbrances. In addition the plaintiff advanced $40,000 more to the Kilsyth Realty Trust with which to pay the vendor. Simultaneously the principals and the plaintiff entered into a construction loan agreement. The principals obtained the remainder of the purchase price by a loan of $2,000 from Carl Rudnick, and two loans aggregating $3,000 from Joseph Rudnick.

The principals decided to erect a loft building on the Portland Street premises, and applied to Snyder and Druker for a construction loan, which the latter declined to make. Through Carl Rudnick they obtained a construction loan of $200,000 from Benjamin Rudnick upon the terms set forth in the construction loan agreement. The mortgage was made in the sum of $325,000 in case the plaintiff should desire permanently to loan that sum or any part thereof above $200,000 upon the security of the completed building, or the mortgage should be used in securing a permanent loan thereon. The mortgage note was payable six months after date "with interest monthly in advance at the rate of one per cent. per month." Thereafter the principals removed the buildings, which took from four to six weeks, but did not begin the erection of a new building until about the middle of May, 1926. About July 20 following, the foundation was completed and the first floor laid. During that month Benjamin Rudnick complained to the principals of the slow progress of the work. They urged him to make further advances because they could not proceed any faster under the schedule of payments provided for in the construction loan agreement. He refused, electing to stand on the terms of the agreement. The principals then asked him if he would make more frequent advances if they would give him a

"completion bond." To this he finally agreed. As a result the bond now in suit, dated August 3, 1926, was executed by Cherney and Carlin, trustees of the Kilsyth Realty Trust, as principals, the Maryland Casualty Company as surety, and the plaintiff as obligee, and on August 4, 1926, a new construction loan agreement was entered into between the obligee and the principals which amended the original by the substitution of a new schedule of payments. The plaintiff thereupon advanced to the principals $10,000, having previously advanced $7,000 of the $17,000 payment stipulated for in the new agreement. The check for this sum of $10,000 was made payable to the principals and to the defendant jointly, and this was true of all subsequent advances made by the plaintiff on account of the loan.

The principals, upon receipt of the $10,000, paid the plaintiff $6,000, the balance then due it for interest on the construction loan including the monthly interest payment due August 1, 1926. Thereafter from August 20, 1926, to and including April 7, 1927, advances amounting to $84,150 were made by the plaintiff by checks payable to the principals and surety jointly and indorsed by the latter. All these advances were turned over to and collected by the principals, with the exception of five amounting to $9,000 which were collected by the plaintiff on account of interest. No further advances on account of the mortgage loan were made after April 7, 1927. The total advances at that time by the plaintiff to the principals aggregated $191,150. No further interest was paid by the principals to the plaintiff after April 7, 1927. The principals desiring faster payments than were provided for in the schedule of August 4, the advances after November 5, 1926, were made more frequently by the plaintiff with the consent of the defendant.

The financial difficulties of the principals increased; they became unable to meet payments due on other real estate owned by them and subject to mortgage; they had difficulty in meeting their pay rolls, and the claims of subcontractors who refused to proceed without security. Between December 28, 1926, and March 14, 1927, at the solicitation of the principals, the defendant entered into nine different

bonding agreements with various contractors conditioned upon the payment of their respective contract prices upon completion of their work. When the principals ceased to work in April, 1927, the building was not finished. After some delay due to litigation with the trustee in bankruptcy of the principals, and on account of liens claimed, the plaintiff foreclosed its mortgage by sale under the power therein contained. The sale was made on July 13, 1927, and by deed dated July 15, 1927, the property was conveyed to Jacob Brown for the sum of $145,750. Brown was a straw man who purchased the property on behalf of the plaintiff. Thereafter the plaintiff took possession of the property and put the building into a tenantable condition, but did not do all of the work called for by the plans and specifications, and the construction loan agreement. At the time of the trial the building was vacant and the plaintiff had not been able to let the whole or any part of it. The judge found that there was not then nor had been prior thereto, since its erection, any demand for space in a building "of a kind and location of said building."

He further found that the plaintiff had no part in the negotiations with the defendant for the bond in issue; that such negotiations were between the principals and the defendant; that before becoming surety the latter caused inquiry to be made of the then condition of the building and the probable cost thereof and, through certain bankers and others, of the financial standing and responsibility of the principals; that by reasonable inference from the facts in evidence it knew of the mortgage and the note secured thereby, and of the construction loan agreement; and that the defendant made no inquiries of the plaintiff as to the principals, their resources, and their handling of this particular undertaking. He states that the evidence was conflicting as to whether or not the defendant knew that of the $10,000 advanced by the plaintiff when the bond and supplementary agreement were signed, $6,000 was repaid to the plaintiff to cover overdue interest, and upon this conflicting testimony, he was not satisfied that this fact was known to the defendant at the time of or immediately prior

to the execution of the bond; that the plaintiff did not disclose this fact or any other fact bearing upon its relations with the principals or upon their financial ability to complete the building.

The trial judge further found that Carl Rudnick knew that the principals had borrowed the money necessary to make the cash payment in the purchase of the property and Benjamin Rudnick knew that their outward appearance of financial responsibility was not due to their own resources; that the building had progressed slowly in the latter part of June and July, 1926, because of lack of funds, and the plaintiff had advanced at the solicitation of the principals $7,000 when but $3,000 was due under the construction loan agreement; that the principals had failed to pay the interest on the mortgage loan promptly when due as provided in the note; and that the building could not be completed by October 1, 1926, the date of the maturity of the mortgage. In this connection the judge states: "I am not satisfied from the evidence, however, that the plaintiff then knew or had reasonable cause to believe that the principals' financial responsibility rested solely on the backing of Snyder and Druker and that they were then at the end of their resources." He found and ruled that the execution of the bond by the defendant was not obtained or procured by the fraud and misrepresentations of the plaintiff; that at the time of the execution of the bond the plaintiff did not have knowledge of facts unknown to the defendant and material to the risk to be assumed by it, which in good faith the plaintiff should have communicated to the defendant prior to the execution of the bond but failed to do. Upon the question of liability in the first action the judge states that "Upon all of the evidence, I find and rule that the bond declared on in the first suit was a subsisting obligation binding upon the defendant at the time when said suit was begun, and that there has been a breach of the condition of said bond."

In the action on the bond the material issues raised at the trial were: (1) Was there such concealment of material facts by the plaintiff in connection with the giving of the

bond that it amounted to a fraud making the bond unenforceable against the surety? and (2) Was the rule adopted by the trial judge respecting the measure of damages correct in determining the amount for which execution should issue?

In the consideration of the first question it is necessary to have regard to the facts found by the judge which the defendant contends amounted to a fraudulent concealment and nondisclosure sufficient to discharge the surety from liability on the bond. The facts so found and relied on by the defendant are (a) that the principals Cherney and Carlin borrowed $5,000 which they paid toward the purchase price of the land; (b) that the work on the building progressed slowly in the latter part of June and July because of lack of funds; (c) that the plaintiff had advanced at the solicitation of the principals $7,000 when but $3,000 was due under the contract; (d) that the principals had failed to pay the interest on the mortgage loan promptly when due; (e) that they paid interest due on the mortgage mainly out of advances which they received from the plaintiff, and that of the first advance after the giving of the bond and the amendment of the schedule of payments, $6,000 was repaid as interest due the plaintiff. The defendant filed one hundred and eleven requests for rulings, and excepted to eleven rulings made or refusals to rule. Many of the requests for rulings have been waived; others have become immaterial as they are requests for findings of fact or were in substance given.

It is settled that in certain circumstances a duty rests upon the obligee named in a bond to disclose to the prospective surety information which the former has and of which the latter is ignorant, even in the absence of inquiry by the surety. If material facts exist of a character which the surety may reasonably assume do not exist but are known to the obligee, the latter is required voluntarily to disclose them to the surety, otherwise not. ". . . where the nature of the contract or transaction is such that, as to certain material facts, one of the parties must necessarily have exclusive knowledge, and such material facts are not amongst those which the other party, having regard again to the

essence and object of the transaction, *must necessarily be supposed to take the risk of not knowing,* the first party is required to divulge to the other those facts, be they many or few, *and those facts only.*" Bower on Actionable Nondisclosure, 87.

The judge found that the defendant knew the terms of the mortgage, the note secured thereby, and the construction loan agreement. If it deemed the question material whether the interest on the mortgage note had been paid, or had desired other information respecting the relations between the plaintiff and the principals which was material to the risk, the burden was upon the defendant to make inquiry of the plaintiff. The evidence shows and the judge found that the defendant made no inquiry of the plaintiff as to the principals or their resources and responsibility, but made other investigation which there was evidence to show was its sole inducement to go on the bond. Generally, whether false representations were made and whether they were material are questions of fact for the court or jury. *Phinney* v. *Friedman,* 224 Mass. 531, 533. It is not contended by the defendant that the plaintiff made any false representations to the defendant, but that there was a concealment and nondisclosure of facts which constituted fraud. This also was a question of fact for the court. *Fottler* v. *Moseley,* 179 Mass. 295, 298. *Loomis* v. *Pease,* 234 Mass. 101, 105.

The finding that there was no fraud on the part of the plaintiff was warranted by the evidence. The findings upon which the defendant relies fall far short of requiring the ultimate finding that the plaintiff failed to disclose to the defendant material facts which would release it from liability. The cases cited by the defendant are not pertinent to the facts found. The case at bar is governed by the principles stated in *Hudson* v. *Miles,* 185 Mass. 582, 585. In *Magee* v. *Manhattan Life Ins. Co.* 92 U. S. 93, 99, 100, it was said: "The mere relation of principal and surety does not require the voluntary disclosure of all the material facts in all cases. The same rule as to disclosures does not apply in cases of principal and surety as in cases of insurance on

ships or lives. . . . If the surety desires information, he must ask for it. The creditor is not bound to volunteer it. . . . To render the general allegation of concealment sufficient in a pleading, it is necessary also to aver that the creditor either procured the surety's signature, or was present when the instrument was executed, and then misrepresented or concealed essential facts which should have been disclosed; otherwise the allegation of fraud is only the pleader's deduction . . . In such circumstances, the creditor is under no obligation, legal or moral, to search for the surety, and warn him of the danger of the step he is about to take." See also *Potts* v. *Chapin,* 133 Mass. 276, 282; *Hudson* v. *Miles, supra; Phinney* v. *Friedman, supra; Windram Manuf. Co.* v. *Boston Blacking Co.* 239 Mass. 123, 126; *Zintz* v. *Golub,* 260 Mass. 178; *Brockton Olympia Realty Co.* v. *Lee,* 266 Mass. 550, 561; *Lee* v. *Jones,* 17 C. B. (N. S.) 482, 503; *Wythes* v. *Labouchere,* 3 DeG. & J. 593, 609; *Hamilton* v. *Watson,* 12 Cl. & Fin. 109, 118, 119; *North British Ins. Co.* v. *Lloyd,* 10 Exch. 523, 534; *Citizens' Trust & Guaranty Co. of West Virginia* v. *Globe & Rutgers Fire Ins. Co.* 229 Fed. Rep. 326, 330; *Fidelity & Casualty Co. of New York* v. *Glenn,* 3 Fed. Rep. (2d) 913, 917; *Bostwick* v. *Van Voorhis,* 91 N. Y. 353, 360; *Bank of Monroe* v. *Anderson Bros. Mining & Railway,* 65 Iowa, 692; *Atlas Bank* v. *Brownell,* 9 R. I. 168, 174; Williston on Contracts, § 1249.

It follows that the exceptions based upon the failure of the plaintiff voluntarily to inform the defendant of certain facts hereinbefore referred to must be overruled. The finding that the defendant is liable for a breach of the condition of the bond was well warranted by the evidence and must stand.

The question remains, whether the judge applied the correct rule as to damages. In an action for a breach of a condition of a bond, if it is found that the condition has been broken, judgment is to be entered for the penal sum, and execution should issue "for so much of the penal sum as is then due and payable in equity and good conscience for the breach of the condition." G. L. c. 235, §§ 9, 10. Respecting the plaintiff's loss by reason of the breach of

the bond, the trial judge found that the principals ceased work upon and abandoned the building shortly after April 7, 1927.. Up to and including that date the total sum advanced was $191,150. No further interest was paid by the principals after that date. The foreclosure sale took place on July 13 and the deed was given on July 15, 1927. As previously stated, the property was bid in by a man representing the plaintiff for $145,750. After the foreclosure the plaintiff expended $20,089.61 toward finishing the building so as to put it in a tenantable condition, but it was not completed as required by the plans and specifications. There was no demand for space in the building and it was not occupied down to the time of the trial of these cases in January, 1928. In addition to the amount expended toward its completion the plaintiff spent $239.85 for insurance, and $1,040.86 for legal services and expenses in connection with the foreclosure. The property was subject to unpaid taxes of 1927 amounting to $7,800. At the date of foreclosure it was found that there was due and payable on the mortgage note with interest the sum of $196,500 or $5,350 more than was due on April 7, 1927, when the breach of the bond occurred.

The judge stated in his findings that if there had been "no breach of the condition of the mortgage, the plaintiff would have been limited to his right either to recover from the defendant the damages suffered by reason of the default of the principals, measured by the difference between the value of the land and building as it then was and its value if built as agreed or so much thereof as would have been necessary with the value of the building as it then was to have paid the mortgage debt and the interest then due thereon, or to have taken possession of the premises, completed the building, and charged the defendant the excess cost less the balance of the loan remaining unadvanced when the default occurred. The plaintiff did not elect either of these alternatives, but, there being also a breach of the condition of the mortgage, chose rather to foreclose the same. I rule that thereby the plaintiff is charged with the amount realized at such foreclosure sale

less the costs, charges and expenses incurred or sustained by the plaintiff by reason of the breach of the condition of said mortgage and the further sum of one per centum of the purchase money in accordance with the terms thereof, and that the amount due and payable in equity and good conscience for the breach of the condition of the bond is the difference between the sum so ascertained and the value the premises would have had if the building had been completed as agreed or so much of said difference as with the amount realized in the foreclosure would equal the amount then due and payable by the principals to the plaintiff upon the note secured by said mortgage."

It is a general rule that the measure of damages in a case of this kind is the difference between the value of the premises at the date of the breach of the bond, and their value if the building had been constructed as agreed, or so much thereof as would have been necessary with the value of the building as it was left to have paid the mortgage debt with interest thereon. It is plain that the judge did not apply this general rule and only found that the value of the building at the date of the foreclosure was the same as the amount of the bid at the foreclosure sale. It is a settled rule that the measure of damages where a contractor has failed to perform a contract for the construction of a building for business uses is the difference between the value of the building as left by the contractor and its value had it been finished according to contract. In other words the question is how much less was the building worth than it would have been worth if the contract had been fully performed. *Powell* v. *Howard*, 109 Mass. 192. *White* v. *McLaren*, 151 Mass. 553. *Norcross Brothers Co.* v. *Vose*, 199 Mass. 81, 95, 96. *Pelatowski* v. *Black*, 213 Mass. 428.

Generally the loss of the use of a building by reason of the failure of a contractor to complete it in accordance with the terms of an agreement may be considered as an element of damages, but in the case at bar it does not appear that any loss of rent was incurred as it was found that no tenants were available. The rule as to damages in case of a breach of an agreement to erect a building where

the agreement is with the mortgagee and not with the owner is the same except that, as the mortgagee holds the property for security only, he cannot recover more than the difference between the value of the property in the condition in which it is left and the amount due on his mortgage. It was said in *Norway Plains Savings Bank* v. *Moors*, 134 Mass. 129, at page 135, that "The measure of damages is the difference between the value of the houses as they were in fact built, and the value they would have had if built in conformity to the agreement, or so much of this difference as would have been necessary, with the value of the houses as built, to have paid the mortgage debt and interest then due; and the time for determining these values was the time when the defendant left the houses, as finished, or as soon afterwards as the plaintiff had notice of the defects and deficiencies, or might have had such notice, by the exercise of reasonable diligence." It is apparent that the trial judge in the case at bar did not follow this rule, as it appears that the damages were determined not as of the time of the breach of the bond on April 7, 1927, when the principals abandoned the work, but as of July 15, 1927, the date of the foreclosure of the mortgage. The statement in substance in the opinion in *Norway Plains Savings Bank* v. *Moors*, *supra*, that if the property had been sold under foreclosure proceedings, the price obtained would have fixed the amount which the mortgagee was bound to credit on account of the building, was not necessary to the decision and does not affect the soundness of the rule above quoted from the same decision. The question so far as it relates to damages is: What has the mortgagee lost because of the failure of the principals to complete the building in accordance with the terms of the agreement? The bond was given to secure the completion of the building and was not a guaranty of the payment of the mortgage note. The amount realized at foreclosure sale was evidence of the value of the premises in their uncompleted condition to be considered with other evidence, but it was not conclusive. The measure of damages, therefore, is the difference at the time of the breach of the bond,

between the security value of the property as it stood at that time and the amount then due upon the mortgage, or the value of the building if then complete. Although the bond guarantees the completion of the building, nevertheless the guaranty runs to the mortgagee whose only interest in the property is as security. Consequently the measure of damages is to be based on the difference in value of the property as security arising from failure to comply with the conditions of the bond. The rule adopted by the trial judge in assessing the damages cannot be supported, first, because the foreclosure sale took place about three months after the breach of the bond and during that time the security value may have changed, and secondly, the amount realized at the foreclosure sale cannot reasonably be held to be the absolute test of fair security value. In this connection it should be said that the plaintiff is not entitled to recover as an element of damages the expenses incurred in the foreclosure proceedings, since the bond was not given to guarantee the payment of the mortgage.

We are of opinion that in the first case the measure of damages adopted by the trial judge was erroneous, and the defendant's exceptions relating thereto must be sustained.

The exceptions in the second case relate only to the alleged fraud of the obligee in failing to disclose certain facts to the surety. The decision reached in the first case upon that question is conclusive against the right of the surety to recover in the second case. It follows that the defendant's exceptions in the first case which relate to damages are sustained. All others are overruled. The findings relating to damages in the first case are reversed, and the case is remanded to the Superior Court to determine the damages in accordance with the rule herein stated. The exceptions in the second case are overruled.

*So ordered.*