834

PRUDENCE CO., Inc., v. FIDELITY & DE-
POSIT CO. OF MARYLAND et al.

No. 293.

Circuit Court of Appeals, Second Circuit.

June 10, 1935.

Thomas E. White, of New York City
(John W. Davis, Joseph F. Murray, and
Thomas E. White, all of New York City, of
counsel), for appellants.

Alfred T. Davison, of New York City (Alfred T. Davison, Martin A. Schenck, and Orrin G. Judd, all of New York City, of counsel), for appellee.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge.

The judgment appealed from was entered upon a directed verdict after a trial by a jury of one, pursuant to a stipulation of the parties. The action is upon a surety bond guaranteeing to appellee, holder of a first mortgage lien, the completion of the apartment hotel, Essex House, in New York City. Central Park Properties, Inc., the mortgagor, was the principal on the bond given by the appellants.

Central Park Properties Inc., had contracted for a building loan with the appellee, of $6,650,000; the building to be erected as provided by certain plans and specifications. Half the amount of the loan was advanced at the time of the closing of the loan, and the balance as the work progressed. Completion of the building was fixed for December 16, 1930.

Appellants' guaranty was for the completion of the building, not for the payment of the loan. On December 5, 1930, a certificate of occupancy having been granted theretofore, the appellee made the final payment under the building loan of $300,000, but by agreement retained $75,000, which amount was then thought sufficient to complete the building. December 16, 1930, the principal of the mortgage was due, and the principal defaulted; all interest had been paid. December 18, 1930, appellee commenced foreclosure proceedings; January 19, 1931, judgment of foreclosure was entered. On the sale, March 17, 1931, appellee became the buyer for $6,000,000; August 30, 1931, a deficiency judgment was entered against the principal. Claiming that the building was not completed on December 16, 1930, the appellee has recovered a judgment based on the claim that it has suffered damages because of such incompletion.

The owner furnished a surety bond of $3,000,000, wherein appellants guaranteed the construction and completion of the building by the principal in accordance with the building loan agreement and the approved plans and specifications, by the 16th of December, 1930. They promised to make good any and all defaults of the principal. Appellee sued for breach, claiming a default in the obligation to complete the building, and, as damages, claimed (1) items necessarily spent to complete the building; (2) items of omission and substitution by the principal whereby the value of the building had been lessened; and (3) that by reason of the failure to complete the building it was deprived of interest on the principal of the loan from December 16, 1930, to October 1, 1931, together with taxes and insurance paid during part of that period.

Before final payment was made, December 5, 1930, the appellee's employees inspected the building thoroughly, and its own report showed that there was only $42,350 worth of work unfinished; a later report of December 16, 1930, fixed the amount at $23,500. When the final payment was made, the amount of work remaining to be done was disputed, but the principal and the appellee agreed upon the retention of $75,000 by the appellee for completion. The $75,000, however, was used by the appellee to reduce the mortgage principal, as was permissible under the terms of the agreement. It was not until February 14, 1931, that claims of incompletion were presented to appellants, by the appellee, in anything near the presently claimed sums. In April, 1931, the listed items of incompletion amounted to $254,177.29, and submitted items of omissions and substitutions amounting to $125,495.34.

As a complete defense, the appellants argue that when, on December 5, 1930, the owner and the appellee agreed upon the final payment of the building loan, and the appellee retained $75,000, appellants were discharged. The building loan agreement provided that "the final advance shall not be due and payable until the borrower shall obtain and deliver to the lender the usual certificate of completion issued by the building Department * * *." A certificate of occupancy was issued October 3, 1930, but this was not a certificate of completion. Thus, the final advance was not due by reason of the issuance of the certificate of occupancy. The principal, however, made claims to the final payment when the certificate of occupancy was granted; the appellee refused, but made some further advances on several occasions, and later did make the final payment as stated. The appellant's contention is that before this payment a controversy arose between the

836

principal and the appellee as to completion, and the consequent right to final payment; that an agreement withholding some of the principal for completion having been reached, this settled the controversy, and so far as completion of the building is concerned, it took the place of the building loan agreement, and that thereafter any recourse which the appellee might have for failure to complete the building was against the principal pursuant to this compromise agreement, and that by virtue of such agreement, the appellants were discharged. The basis of this contention is that the agreement altered and changed the terms of the instruments by which the appellants were bound.

But making an advance of payment did not, by the terms of the building loan agreement, constitute acceptance or approval of the work done. When the final payment was made, there was no release from the obligation to complete and no agreement was made upon any sum for completion. No compromise agreement took the place of the building loan agreement. The intent to substitute a new executory contract for an existing one must be clearly established. City Nat. Bank v. Fuller, 52 F.(2d) 870, 79 A. L. R. 71 (C. C. A. 8). The trial court found that the agreement of December 5, 1930, was in no way an accord and satisfaction. Upon disputed evidence, whether or not the transaction or agreement arrived at was a compromise, novation, or an accord and satisfaction, was a question of fact found against the appellants. Union Indemnity Co. v. United States, 74 F.(2d) 645 (C. C. A. 6).

■ Moreover, the surety bond provided: "Any waiver or release by the Obligee * * * of any default or omission by the Principal and/or Surety in complying with said building loan agreement or plans and specifications or with the provisions of this bond, must be in writing and signed by the duly authorized officers of the Obligee in order to be binding upon the Obligee and any such waiver or release shall apply only to the item or items specifically so released." Thus the appellants agreed that appellee would not be affected by releases or waivers unless in writing, and signed by duly authorized officers, specifying the items released. The appellee had a right to rely upon this provision. This defense therefore must fail.

■ In the opinion below, the court held that the measure of damages which the appellee could recover is the cost of completion according to the plans and specifications. The appellee was entitled to a completed building for security only. The cost of completion may well be considered as the amount and the measure of damages sustained. In Kidd v. McCormick, 83 N. Y. 391, there was an agreement to erect houses on certain lots on which the plaintiff held a bond and mortgage. Plaintiff later agreed to permit subsequent mortgages to have priority over his if the defendants deposited a certain sum of money in a trust company to insure the completion of the houses, which was done. The houses were not completed. The plaintiff completed them, foreclosed his mortgages, bid in the premises, and entered a deficiency judgment. Plaintiff sued to reach the moneys deposited in trust. The trial court found that the houses in their incompleted state were worth less than if finished as agreed, and a judgment was entered for the difference. Affirming on appeal, the court said that he was entitled to be put in as good plight as if the houses had been finished. "His damages are the difference in the value of the premises, as they were with the houses unfinished, * * * from what the value of them would have been, had the houses been finished * * * according to the contract." After saying that this was the measure of the damages, the court pointed out that there were several methods of arriving at the amount. Testimony of three kinds might be received: (1) Experts as to the difference in value; (2) experts as to the cost of completion; and (3) actual cost of completion. The end to be arrived at, however, was said to be the difference in value between the building furnished and the house as it should have been furnished. If the actual cost of completion does not, in fact, represent the difference in value, it is not to be considered as determinative. In Trainor Co. v. Ætna Casualty & Surety Co., 290 U. S. 47, 54 S. Ct. 1, 3, 78 L. Ed. 162, the mortgagee sued on a bond guaranteeing completion of a building by the mortgagor. The mortgagor failed to complete fully 28 of 52 buildings which he had agreed to erect and complete. The property was located in Pennsylvania, and the court pointed out adherence to the Pennsylvania rule of law as essential, but said: "Petitioner is entitled to be put in as good position in respect of its debt as it would have occupied if the buildings had been completed in accordance with the terms of the undertaking; and this

can be done here only by giving it the amount of the difference between the value of the unfinished buildings and their value as it would have been if completed in accordance with the agreement—see Kidd v. McCormick, supra, 83 N. Y. [391] page 398 —but exceeding neither the amount due on its debt nor the amount of the bond."

The true measure of damages to this appellee is the extent to which its security was impaired by the failure to complete in accordance with the plans and specifications. The actual cost of completion may, as observed in Comey v. United Surety Co., 217 N. Y. 268, 111 N. E. 832, Ann. Cas. 1917E, 424, make damages more certain, or may be used as proof of actual damages.

Recovery has been allowed in Pennsylvania (Mechanics' Trust Co. v. Fidelity & Casualty Co., 304 Pa. 526, 156 A. 146, 149) on a surety guaranteeing completion of houses by the mortgagor, the court saying: "The bond upon which defendant was surety imposed an absolute undertaking—to complete the dwellings—which, when the principal defaulted, defendant was bound to perform. This construction is supported by numerous authorities. * * * The measure of damages on a bond given to a mortgagee-obligee guaranteeing completion is the cost of completion, * * * and is not limited to the difference between the value of the property in the condition in which it was left and the amount of principal and interest due on the mortgage." See Board of Education v. Maryland Casualty Co., 27 F.(2d) 20 (C. C. A. 3); Purdy v. Massey, 306 Pa. 288, 159 A. 545; Equitable Trust Co. v. Surety Co., 214 Pa. 159, 63 A. 699, 6 Ann. Cas. 465. We understand this to mean that the actual loss, namely, the extent to which the security was impaired, is usually indicated by the cost of completion of the building. This cost may be rebutted by showing excessive or unnecessary expenditures by expert testimony and therefore that the cost is not the damages.

In Norway Plains Savings Bank v. Moors, 134 Mass. 129, the defendant covenanted with a mortgagee-bank that certain houses would be erected, as agreed, by the mortgagor. There was a default by the mortgagor. The court held that the measure of the bank's damages was "so much of the difference in value between the houses as they were in fact built, and the value they would have had if the foundations had been properly constructed, as added to the value of the houses as in fact built was sufficient to pay the principal of the mortgage debt and the interest due thereon."

We think, therefore, that the measure of damages was the difference between the value of the building on December 16, 1930, as the work had progressed, and the value it would have had on that day if completed strictly in accordance with the plans and specifications.

Appellee claimed, not only for items of incompletion, but also for omissions and substitutions. It is true that these latter items might detract from the value of the building on that date. The contention was advanced below that these changes were made by consent of appellee.

Evidence was offered tending to show that the president of the appellee consented to the substitutions made, and it was excluded. The appellants claimed a parol waiver of the requirement of the bond that no waiver or release of default or omission was to be valid unless in writing signed by an officer and referring specifically to the item or items waived or released. Such a parol waiver or consent would be legally effective. Northern Assurance Co. v. Grand View Bldg. Ass'n, 183 U. S. 308, 352, 22 S. Ct. 133, 46 L. Ed. 213. Beatty v. Guggenheim Exploration Co., 225 N. Y. 380, 122 N. E. 378. If the appellee's president had authority to waive the requirement of a written waiver or consent, excluding such evidence was prejudicial error. Waiver of the condition of the bond and consent to changes as substitutions or omissions would release the appellant from such items as claims of damages. But since the bond required completion in accordance with the plans and specifications, any omissions or inferior substitutions not consented to by appellee may be considered as items of damage.

In addition to the bond furnished by the appellants, the building loan agreement required the personal guarantee of the president of the Central Park Properties, Inc., in the amount of $1,000,000. The fifth paragraph of the building loan agreement provided: "The payment of principal and interest on said bond and mortgage, as and when the same shall become due, and all other payments required to be made hereunder, and the performance by the Borrower of all covenants and agreements herein

contained, shall be guaranteed jointly and severally by Abraham E. Lefcourt."

Lefcourt not only guaranteed the completion of the building, but also the payment of principal and interest on the bond and mortgage, and agreed to make good any default of the borrower on its building loan agreement, and bond or mortgage. The guaranty of the principal and interest read: "together with payment of principal and interest on the bond and mortgage."

The appellee has recovered interest on the mortgage, and the taxes on the property, and insurance. None of these were within the undertaking of the appellants. The condition of the bond given by the appellants was that if the principal should proceed with the construction of the building so that it was completed in accordance with the building loan agreement and the plans and specifications, and ready for occupancy not later than December 16, 1930, free and clear of liens, and if the principal paid for the cost of construction and completion, and "if the surety shall indemnify the obligee from loss or damage caused by the failure to construct, pay for and complete the building," and if the surety shall make good any default "in constructing, paying for and completing the building," then performance of the obligation of the bond was satisfied. There is no condition, express or implied, respecting payment of the principal or the interest of the loan, taxes or insurance, and no liability exists therefor. Province Securities Corp. v. Maryland Casualty Co., 269 Mass. 75, 168 N. E. 252; United Real Estate Co. v. Mc-Donald, 140 Mo. 605, 41 S. W. 913; Smith v. Molleson, 148 N. Y. 241, 42 N. E. 669. In the absence of express contract to pay the interest, interest as damages cannot be recovered apart from the principal of the debt. Holden v. Trust Co., 100 U. S. 72, 25 L. Ed. 567; Brewster v. Wakefield, 22 How. 118, 16 L. Ed. 301; Hamilton v. Van Rensselaer, 43 N. Y. 244; O'Brien v. Young, 95 N. Y. 428, 47 Am. Rep. 64.

Moreover, under the rule of measure of damages to which we have made reference, and which is here applicable, the interest, taxes, or insurance may not be recovered. Kidd v. McCormick, supra; Trainor Co. v. Ætna Casualty Co., supra.

Upon a new trial, which must be had, in establishing appellee's damages, the rule of cost of completion will be the guide. Evidence of experts as to the difference in value showing cost of completion, evidence of actual cost, and experts' testimony as to cost of completion, may be received.

Loss due to items of inferior substitution unless effectively consented to by the appellee may also be recovered.

Since the complaint does not plead and no proof has been received showing loss of rent during the period of incompletion, we need not decide whether or not this appellee might have had a loss of profits because of failure to have a completed building after its entry and possession of the premises. See Province Securities Corp. v. Maryland Casualty Co., 269 Mass. 75, 168 N. E. 252, 257.

Judgment reversed, and new trial ordered.